**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Koontz-Wagner Custom Control** | § | **Case No. 18-33815** |
| **Holdings LLC,** | § | **(Emergency Relief Requested)** |
| | § | |
| Debtor. | § | **(Chapter 7)** |

**EMERGENCY MOTION FOR: (I) ORDER (A) SCHEDULING AUCTION AND SALE
HEARING, (B) APPROVING AUCTION PROCEDURES, AND (C) GRANTING
RELATED RELIEF; AND (II) ORDER (A) AUTHORIZING SALE OF INDIANA
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS, (B) AUTHORIZING ASSIGNMENT OF EXECUTORY
CONTRACTS, AND (C) GRANTING RELATED RELIEF**

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN
WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS
PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU
MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY
COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE
SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR
RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE;
OTHERWISE, THE COURT MAY TREAT THE PLEADING AS
UNOPPOSED AND GRANT THE RELIEF REQUESTED

EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT
CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU
WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE
REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY
CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN
IMMEDIATE RESPONSE.

THE COURT HAS NOT YET SCHEDULED ANY HEARINGS ON THIS
MOTION. IF YOU WOULD LIKE TO BE NOTIFIED WHEN THE COURT
SETS A HEARING, PLEASE SEND A WRITTEN REQUEST TO LISA
CIACCIO AT LCIACCIO@DIAMONDMCCARTHY.COM.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, in his capacity as chapter 7 trustee (the "Trustee") for the estate of Koontz-Wagner Custom Control Holdings, LLC. (the "Debtor"), files this emergency motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of: (I) an order, substantially in the form annexed hereto as Exhibit A (the "Auction Order"), (a) scheduling an auction and a sale hearing , (b) approving auction procedures, and (c) granting related relief; and (II) an order (the "Sale Order") (a) authorizing the sale of the Indiana Assets free and clear of all liens, claims, encumbrances, and other interests, (b) authorizing assignment of executory contracts, and (c) granting related relief. In support of the Motion, the Trustee respectfully submits the following:

## EMERGENCY CONSIDERATION[1]

1.      The Trustee is requesting that the Auction Order and the Sale Order be considered and entered on an emergency basis in order to leverage the extensive prepetition marketing of the Indiana Assets and obtain the highest and best offer available prior to any diminution in the value of those assets. It is imperative that the sale of the Indiana Assets occur as soon as possible because a large portion the value of the Indiana Assets is in the WIP and related Purchase Orders.

2.      The value of the WIP is directly tied to the ability of a purchaser to negotiate arrangements with the Debtor's former customers to complete the WIP and deliver the WIP in a timely manner. If the sale of the Indiana Assets is delayed, the customers may find alternative

---

[1] Capitalized terms not otherwise defined in this section shall have the meanings ascribed to them elsewhere in the Motion.

parties to finish the WIP, resulting in the loss of significant value to the estate.    The Trustee therefore believes that emergency consideration is warranted.

3.    Subject to the availability and approval by the Court, the Trustee proposes the following proposed timeline for the Auction and Sale:

| | |
|---|---|
| Wednesday, August 15, 2018 at 10:00 a.m. CST | Hearing on Auction Order |
| Wednesday, August 15, 2018 at 1:00 p.m. CST | Auction at Offices of Diamond McCarthy LLP, 909 Fannin 37th Floor, Houston, TX 77010 |
| Wednesday, August 15, 2018 (Afternoon) | Hearing on Sale Order |
| August 17, 2018 | Closing of Sale |

## JURISDICTION

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a), 363(b), (f), and (m), and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9006.

## BACKGROUND

**A.  Case Background**

7.    On July 11, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  The United States Trustee appointed the Trustee on July 11, 2017.

8.    On July 12, 2018, the Trustee selected Cooper Scully, P.C. and Diamond McCarthy, LLP to serve as co-counsel on this case.  The Trustee intends for Cooper Scully, P.C. to serve as general bankruptcy counsel to the Trustee and Diamond McCarthy, LLP to serve as

special counsel with respect to the sale of the Debtor's assets and or business.[2]  On July 23, 2018, the Trustee selected Commenda Capital, LLC to market certain property of the estate for sale.

9.     The Debtor filed its Schedule of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA") on July 30, 2018. [ECF Nos. 68, 70].  The meeting of creditors pursuant to Bankruptcy Code § 341 has not yet been scheduled by the office of the United States Trustee.

**B.  The Debtor's Business and Assets**

10.     The Debtor was in the business of manufacturing and integrating control house enclosures for gas turbines, electric generators, oil and gas pipeline compressor stations, electric transmission and distribution systems, and other applications.  Suppliers of various related components consigned their products to the Debtor, and the Debtor integrated the components into a customizable control house for delivery to the end user.

11.     The components provided to the Debtor were often equipment of significant value to the suppliers and critical to the ultimate project.  As such, the timely construction and integration of the control houses was essential to the Debtor's business.

12.     The Debtor operated its business out of four principal locations: (1) South Bend, Indiana; (2) Caldwell, Idaho; (3) Houston, Texas; and (4) Chattanooga, Tennessee.

13.     Prior to the Petition Date, the Debtor began efforts to sell substantially all of its business and assets.

---

[2] Diamond McCarthy LLP has also assisted with certain additional matters where directed by the Trustee and necessary and appropriate under the circumstances. Diamond McCarthy LLP and Cooper Scully, P.C. attorneys have coordinated to avoid duplication of work in this case.

14.     With respect to the Chattanooga facility, the Debtor had wound-up operations prior to the Petition date and started a process of liquidating the remaining assets, which the Trustee has completed post-petition.

15.     On the other hand, the Trustee believes that the Debtor's business segments at the South Bend, Caldwell, and Houston locations may have going-concern value in addition to being highly attractive to strategic purchasers seeking to purchase works-in-process ("WIP"), the contracts or purchase orders ("Purchase Orders") under which the WIP was produced, fixed assets and equipment, intellectual property, accounts receivable, and other assets (the "Marketable Assets").

16.     The Debtor partially completed projected for several customers prior to the Petition Date. The WIP and the associated Purchase Orders have value because an entity in the same business as the Debtor or entering into the same business as the Debtor can (i) acquire the WIP and negotiate its completion with the customer or (ii) receive assignment of the Purchase Order. This forms a large portion of the potential value of the bankruptcy estates.

17.     Because of the urgent nature of the Debtor's business, however, the WIP retains value only if it can be sold within a timeframe that allows the purchaser to get up to speed on a project, negotiate with the customer regarding the completion of the WIP, and deliver the completed work to the customer in a timely and cost-effective manner. In the event of substantial delay, the customers can cover the Purchase Order with third parties and setoff against accounts receivable.

**C.  Marketing of the Debtor's Assets**

18.     For approximately one year prior to the Petition Date, the Debtor engaged in extensive marketing of its business and assets for sale, and in particular the assets related to the

Debtor's facilities in Caldwell and South Bend.  These efforts were led by Commenda Capital, LLC ("Commenda").

19.    Commenda contacted many potential purchasers of the Debtor and participated in negotiations with several of these potential purchasers. While Commenda did not locate a buyer, these potential purchasers investigated the Debtor's business and assets extensively prior to the Petition Date.

20.    Prior to the Petition Date, the Debtor created a virtual data room in connection with its efforts to sell its business. This data room was maintained by the Debtor's parent company, Williams Industrial Services Group Inc. ("Williams"). Williams has agreed to continue to maintain the data room on behalf of the Trustee on a limited post-petition basis.

21.    Using the data room, as supplemented by the Trustee's investigation of the Debtor's financial condition, and Comenda's knowledge of the parties potentially interested in the Debtor's business, the Trustee and Commenda have engaged in an intense 24/7 marketing process over the past two weeks. The Trustee ultimately provided due diligence materials to twenty (20) parties to solicit bids on the either the Debtor's entire business or a substantial part thereof. The Trustee fielded offers from and entered into negotiations with certain of these parties, some of which negotiations are ongoing.

22.    Given the expedited timeframe needed with respect to the WIP and Purchase Orders, the Trustee sent form term sheets on Wednesday, August 1, 2018, to parties having expressed interest in the Indiana Assets and to seek a stalking horse bidder. Although the Trustee did not select a stalking horse, multiple parties made offers for the Indiana Assets and several parties expressed interest in bidding at an auction after additional due diligence.

### D.  Overview of Auction Procedures

23.    The Trustee believes that conducting an auction (the "Auction") pursuant to the below procedures (the "Auction Procedures") would result in the highest and best offer for the Indiana Assets.  The Trustee intends to conduct the auction at the offices of Diamond McCarthy LLP at 909 Fannin Street, 909 Fannin, 37th Floor, Houston, Texas 77010 on Wednesday, August 15, 2018. Based on the interest expressed by certain parties, the Trustee expects multiple bidders and a competitive bidding process.

24.    Importantly, nothing in the Auction Order or Auction Procedures obligates the Trustee to sell the Indiana Assets to the highest bidder at the Auction.  The Trustee may determine in his business judgment that bids during the auction are not sufficient to justify a sale. In that instance, despite having received bids at auction, the Trustee will not sell the Indiana Assets pursuant to the Auction unless, in the Trustee's sole business judgment, in consultation with his advisors, such sale is in the best interests of the estate.

25.    The reason for this caveat is simple: The Trustee is negotiating at the same time with the customers, and, the customers may pay a higher price than the bidders to have the work completed by an agent of the Debtor or through a negotiated arrangement directly with the Trustee, rather than through a third party purchaser of the WIP and the Purchase Orders.

26.    Subject to waiver and modification by the Trustee, in his sole business judgment, the Auction will proceed according to the following Auction Procedures:

| Provision | Description |
|---|---|
| **Date and Time** | Wednesday, August 15, 2018, at 1:00 p.m. CST |
| **Location** | Diamond McCarthy LLP<br>909 Fannin, 37th Floor<br>Houston, TX 77010 |

| | |
|---|---|
| **Access to Diligence Materials** | To receive access to due diligence materials, an interested party must submit to the Trustee and his advisors an executed confidentiality agreement in form and substance satisfactory to the Trustee. Parties seeking access to diligence materials should submit a written request to James Gansman (jgansman@commendacapital.com) and Andrew Lipovsky (alipovsky@commendacapital.com) of Commenda Capital. |
| **Auction Qualification Process** | To qualify to submit bids at the Auction, an interested party must:<br><br>(a) <u>Good Faith Deposit</u>: Unless such party submitted a deposit in connection with its consideration as a stalking horse bidder, submit to the Trustee a certified or bank check or wire transfer in the amount of at least $10,000 (the "<u>Auction Good Faith Deposit</u>"). The Auction Good Faith Deposit shall be held in escrow and credited to the closing payment if the bidder is ultimately determined to be the Successful Bidder (as defined below), if any closing payment is due, or to be returned to the bidder in whole or in part as applicable if the Bidder is not the Successful Bidder or the Backup Successful Bidder. In the event that a bidder is selected as the Backup Successful Bidder, the Good Faith Deposit shall be returned to the Backup Successful Bidder within five (5) business days following the closing of a sale to the Successful Bidder.<br><br>(b) <u>Corporate Authority</u>: The interested party must submit written evidence reasonably acceptable to the Trustee, in his business judgment, demonstrating appropriate corporate authorization to consummate the proposed transaction.<br><br>(c) <u>Proof of Financial Ability to Perform</u>: The interested party must submit written evidence from which the Trustee can reasonably conclude, in his business judgment, that the interested party has the necessary financial ability to (i) close the transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned.<br><br>A party fulfilling the requirements above shall be a "<u>Qualified Bidder</u>." |
| **Conduct of Auction** | (a) <u>The Trustee Shall Conduct the Auction</u>: The Trustee and his advisors shall direct and preside over the Auction, which shall be transcribed.<br><br>(b) <u>Terms of Overbids</u>: An "<u>Overbid</u>" is any bid made at the Auction, in accordance with the following:<br><br>    i. *Minimum Overbid Increments*. A Qualified Bidder wishing to submit a bid at the Auction must bid an amount greater than the total consideration contained in the previous bid and be on terms no less favorable to the estate, in the Trustee's sole business judgment. Qualified Bidders shall submit successive bids in increments to be determined by the Trustee at the Auction (the "<u>Incremental Bid</u> |

|  | Amount") for the purchase of the assets until there is only one offer that the Trustee determines, subject to Court approval, is the highest and/or best offer for the assets (a "<u>Successful Bid</u>" and such Bidder, the "<u>Successful Bidder</u>") or the Trustee, in his sole discretion, terminates the Auction without a Successful Bid. The second highest bid, to the extent determined to be acceptable to the Trustee, shall be deemed to be the backup bid (the "<u>Backup Successful Bid</u>" and such Bidder, the "<u>Backup Successful Bidder</u>").<br><br>ii. *Conditions Precedent to Sale.* Overbids shall not be subject to any: (a) financing contingency, (b) contingency relating to due diligence, (c) contingency relating to the approval of the Bidder's board of directors or other internal approvals or non-governmental third-party consents or approvals, or (d) conditions precedent to the Bidder's obligation to purchase the Assets other than entry of a final order of the Court authorizing the sale of the Indiana Assets to the bidder.<br><br>iii. *Other Terms.* Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, (i) a description of all assets to be acquired pursuant to the bid on an itemized basis, (ii) be made on a form terms sheet to be provided to the auction, (iii) contain an affirmation to be bound by the terms of the Auction Procedures, and (iv) be signed.<br><br>iv. *Open and Binding Bid.* All Overbids made at the Auction shall remain open until the earlier of (i) if the Bidder submits the Successful Bid or is deemed to be the Backup Successful Bidder, thirty (30) days after the entry of an order by the Court approving a definitive agreement providing for the Sale of those Assets to which it relates, and (ii) if the Qualified Bidder is not selected as a Successful Bidder or the Backup Successful Bidder, three (3) days after the end of the Auction. |
|---|---|
| **Trustee's Authority to Decline Sale to Highest** | **<u>The Trustee shall not be obligated to sell the Indiana Assets to the highest bid at the Auction if he determines, in his sole discretion informed by advice from his advisors, that selling the Indiana Assets is not in the best interests of the estate after the selection of the Successful Bidder.</u>** |

## RELIEF REQUESTED

27.     By this Motion, the Trustee requests the entry of two orders concerning the sale of the Indiana Assets. First, the Trustee seeks the immediate entry of the Auction Order approving the Auction Procedures summarized above and setting a hearing on the sale of the Indiana Assets

(the "Sale Hearing"). This relief requested by the Trustee is intended to provide for a competitive bidding procedure for the Indiana Assets through the Auction Procedures at the Auction.

28.     Following the entry of the Auction Order, the Trustee will conduct the Auction. The Auction is scheduled for Wednesday, August 15, 2018, at 1:00 p.m. Subject to waiver and modification by the Trustee, the Trustee will conduct the Auction pursuant to the Auction Procedures and, in his sole business judgment, will either (i) choose the Successful Bidder with the highest and best offer for the Indiana Assets and the Backup Successful Bidder or (ii) terminate the Auction without selecting a successful bidder.

29.     Following the Auction, if the Trustee has selected a Successful Bidder, the Trustee will convene with his advisors and compare the bid of the Successful Bidder with proposals from customers for return and completion of the work on a one-off basis to determine which alternative permits the estate to have the best and highest recovery for the creditors of the estate and shall report his result to the Court at the Sale Hearing. If the Trustee determines that the bid of the Successful Bidder is the higher and better bid for the estate as compared to the one on one arrange ments with the customers, the Trustee shall request at the Sale Hearing the entry of the Sale Order (a) approving the sale of the Indiana Assets free and clear of all claims, liens, or other interests to the Successful Bidder, and (b) authorizing the Trustee to assume and assign any contracts assumed and assigned pursuant to the Successful Bid. If the Trustee determines that the non-Auction proposals with the customers is superior for the estate, the Trustee will inform the Court of such at the Sale Hearing and not seek approval of the Successful Bid from the Auction.

30.     All parties' right to urge a different result at the Sale Hearing is preserved..

## BASIS FOR RELIEF

### A.    The Auction Procedures Are Appropriate Under the Circumstances

31.    A trustee may sell, after notice and a hearing, estate assets outside the ordinary course of business. 11 U.S.C. § 363. To obtain approval of a proposed sale of assets, a trustee must "satisfy its fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). Generally, the trustee can make this showing by "demonstrate[ing] that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as a substantial doubt that the higher bidder can raise the cash necessary to complete the deal." *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) (citing 3 *Collier on Bankruptcy* ¶ 363.02[1][f] (15th ed. rev.2009)). Further, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

32.    The implementation of competitive auction procedures to facilitate the sale of a debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest and best return for a debtor's estate. The Trustee submits that the Auction Procedures and the opportunity for competitive bidding embodied therein are reasonable and designed to maximize the value of the Indiana Assets and should, therefore, be approved by this Court. This is especially true in this case because of the extensive prepetition marketing efforts for the Debtor's assets.

33.    Accordingly, in the exercise of his reasonable business judgment, the Trustee has concluded that: (a) a prompt sale of the Indiana Assets is the best way to maximize value for the

Debtor's estate, and (b) the proposed Auction Procedures described herein are the most effective

method of obtaining the highest and best offer for the Indiana Assets. Entering the Auction Order

is therefore necessary and appropriate to carry out section 363 of the Bankruptcy Code.

**B.    Sale of the Indiana Assets is An Exercise of the Trustee's Reasonable Business Judgment**

34.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate." Courts have held that approval of a proposed sale of substantially all of the assets of

a debtor under Section 363 of the Bankruptcy Code outside the ordinary course of business is

appropriate if a court finds that the transaction represents a reasonable business judgment on the

part of the trustee. *See In re Abbotts Dairies of Pa*., 788 F.2d 143 (3d Cir. 1986); *In re Delaware

& Hudson Ry. Co*., 124 B.R. 169, 176 (D. Del. 1991); *In re Stroud Ford, Inc.*, 164 B.R. 730, 732

(Bankr. M.D. Pa 1993); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128

B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration & Air Conditioning

Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Lionel Corp*., 722 F.2d 1063 (2d Cir.

1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *In re Ionosphere

Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334,

335-36 (Bankr. D. Del. 1987). Further, unlike a chapter 11 case, where the ultimate rehabilitation

and reorganization of a debtor is possible and often in the best interests of creditors, chapter 7 of

the bankruptcy code contemplates that "[t]the trustee shall . . . collect and reduce to money the

property of the estate for which such trustee serves, and close such estate as expeditiously as is

compatible with the best interests of the parties in interest . . . ." 11 U.S.C. § 704.

35.    Sound business purposes justify the sale process contemplated herein. The

Trustee believes that a prompt sale of the Indiana Assets by auction presents the best opportunity

to realize the maximum value of the Indiana Assets for distribution to creditors. Trustee further believes that the net benefit to the Debtor's creditors may be adversely affected absent an immediate sale. The principal value of the Indiana Assets lies in the WIP and uncompleted Purchase Orders made between the Debtor and the Debtor's customers. Several of the Purchase Orders have deadlines by which the finished product must be delivered.  The value to potential purchasers of assumed and assigned Purchase Orders depends on acquiring the Purchase Orders with enough time to finish the work under the Purchase Order and make timely delivery according to the terms thereof.  Potential purchasers have also indicated that they may need to supplement their existing workforce to perform the Purchase Orders.  Immediately initiating the sale process is necessary so the Successful Bidder, if any, can employ the Debtor's former employees before they find other employment.  Further, if a sale is not consummated promptly, the Trustee will continue to incur costs that, although necessary, will erode the proceeds that can be realized for creditors from a sale of the Indiana Assets, including such costs as security and utility charges.

36.     At the Sale Hearing, the Trustee will present evidence regarding his decision-making process with respect to selection of the Successful Bid or the termination of the Auction. The Trustee, in conjunction with his advisors, will be able to demonstrate to the Court that his selected course of action will be a valid exercise of business judgment.

37.     The Trustee believes that the results of the Auction will be the product of good faith, arm's length negotiations with respect to the price and other terms of the sales of the Indiana Assets between the Trustee and highest and best bidder or bidders at the conclusion of the Auction and is calculated to result in the highest and best offers practicable under the circumstances of this case.  The Trustee believes that the Auction Procedures will enable the

Trustee to leverage the extensive prepetition marketing of the Debtor's business and assets in a transparent and effective manner to capture the diminishing value of the Purchase Orders and WIP.

38.     The sale of the Indiana Assets at the Auction will afford the Trustee an opportunity to maximize the recoveries to creditors. Accordingly, the Trustee request that the Court approve the proposed procedures for sales of the Assets to the highest or otherwise best bidder or bidders at the Auction and approve the sale presented to the Court at the Sale Hearing.

**C.      The Successful Bidder Should Be Granted the Protections of Section 363(m) of the Bankruptcy Code**

39.     As will be set forth in further detail at the Sale Hearing, the Trustee also maintains that the Successful Bidder, if any, should be entitled to the protections afforded by Bankruptcy Code Section 363(m).

40.     Bankruptcy Code Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

41.     While the Bankruptcy Code does not define "good faith," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see  In re Sasson Jeans, Inc.*, 90 B.R. 608,

610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). The Fifth Circuit has clarified good faith in the context of section 363(m) of the Bankruptcy Code in two ways: (i) defining a good faith purchaser  as "one who purchases the assets for value, in good faith, and without notice of adverse claims" and (ii) noting that "the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re TMT Procurement Corp.*, 764 F.3d 512, 520 (5th Cir. 2014).

42.     The Trustee will demonstrate at the Sale Hearing that the Successful Bidder, if any, shall have negotiated and dealt with the Trustee at arm's length and without any indications of collusion or fraud. Under these circumstances, this Court should find in the order approving the sale of the Indiana Assets that Successful Bidder is entitled to all of the protections of Bankruptcy Code Section 363(m).

**D.     The Successful Bid Will Not Be the Result of Collusive Bidding Under Section 363(n) of the Bankruptcy Code.**

43.     As set forth above, the Trustee will select any Successful Bidder for the sale of the Indiana Assets at arm's length and in good faith. Moreover, the Trustee does not believe that any such sale will be the result of collusion or other bad faith between bidders or that the sale price under a definitive purchase and sale agreement of a Successful Bidder will be controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code Section 363(n).

44.     As the Trustee will demonstrate at the Sale Hearing, the definitive agreement of a Successful Bidder will be negotiated, proposed, and entered into by the Trustee and any Successful Bidder without collusion, in good faith, and from arm's length bargaining positions. Neither the Trustee nor any Successful Bidder will have engaged in any conduct that would cause or permit the definitive purchase and sale agreement of a Successful Bidder, as applicable, to be avoided under Bankruptcy Code Section 363(n).

**E.     Sale of the Assets Should Be Free and Clear of Claims and Interests**

45.     Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell and transfer the Indiana Assets to the Successful Bidder free and clear of all claims, liens, or other interests to attach to the proceeds of the sale of the Indiana Assets, subject to any rights and defenses of the Trustee and other parties in interest with respect thereto. Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Fulfilling any of the enumerated conditions in section 363(f) is sufficient for the Sale or Sales to be free and clear. *In re Demay Int'l LLC*, 471 B.R. 510, 518 n.13 (S.D. Tex.

2012); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007).

46.    The Debtor's schedules list two potentially secured parties. Centre Lane Partners Master Credit Fund II, L.P.  ('Centre Lane") has filed UCC financing statement in Indiana. The Trustee has contacted counsel representing Centre Lane in connection with the underlying finance transaction and been informed that the Debtor is a guarantor of a loan facility to the parent from Centre Lane. This loan facility is not in default. Further, the parent company and Centre Lane are currently negotiating a refinancing of the loan facility that would remove the Debtor as a guarantor. Centre Lane will be provided notice of this Motion by mail and vial email to counsel.

47.    Wells Fargo is listed as a party with a $154,590.25 secured claim described as a letter of credit. Wells Fargo will be provided notice of this motion by regular mail and by email if Trustee becomes aware of the identity of counsel to Wells Fargo in this case.

48.    If Centre Lane, Wells Fargo, or any other party with a claim or interest in the Indiana Assets does not object to the sale, the Indiana Assets may be sold free and clear of such party's interests pursuant to section  363(f)(2) of the Bankruptcy Code. Further, with respect to any other party asserting a claim, lien, or other interest in the Assets other than Centre Lane or Wells Fargo, such interest is in bona fide dispute and may be sold free and clear of claims or interests pursuant to section 363(f)(4).

49.    A sale free and clear of all claims and interests is necessary to maximize the value of the Indiana Assets. A sale subject to claims, liens, and interests would result in a lower purchase price and be of substantially less benefit to the Debtor's estate. A sale free and clear of liens is particularly appropriate under the circumstances here because any lien, to or against the

Indiana Assets that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party in interest.

**F.     Notice of the Proposed Sale is Reasonable Under the Circumstances**

50.     In order to receive the highest and best price in return for the Indiana Assets under the circumstances, the Trustee has filed this Motion seeking to conduct the Auction and hold a Sale Hearing. The value of the Debtor's WIP and Purchase Orders of the Indiana Assets is likely to vanish unless the assets are immediately sold because monetizing the WIP and Purchase Orders requires immediate action in order to capture their value-as more time passes, and, deadlines are not met, the WIP and Purchase Orders have less and less value.

51.     Further, the Trustee continues to incur costs associated with preserving the value of the Indiana Assets. In order to yield the greatest possible return for the benefit of creditors and to minimize potential administrative expenses, the Trustee believes that the proposed timing of the Auction and sale is reasonable.

52.     The Trustee will serve a copy of this Motion on all parties in interest indicated on the case mailing matrix by U.S. mail with postage prepaid as will be evinced by separate a separate certificate of service. Additionally, the first page of the Motion provides a method by which interested parties may request the time and date of any hearings on the relief requested in the Motion. Accordingly, the Trustee submits that the notice to be provided is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid for the Indiana Assets and/or to object to the proposed sale of the Indiana Assets.

### G.      The Assumption and Assignment of Executory Contracts Should Be Authorized

53.      Under Bankruptcy Code Section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor. This subsection provides:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A)      cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)      provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> > (A)      the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B)      adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 .S.C. § 365(f)(2).

54.      The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *In re PRK Enterprises, Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (citing *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla.1994)); *accord EBG Midtown S. Corp. v.*

*McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992). Generally, "[a]ssurance of future performance is adequate if performance is likely (i.e. more probable that not) and the degree of assurance necessary to be deemed adequate falls considerably short of an absolute guaranty." *In re PRK Enterprises, Inc.*, 235 B.R. at 603.

55.    Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., id.* (holding that the evidence showing financial capacity and officers' commitment provided adequate assurance of future performance); *In re Bygaph, Inc*., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to the business to give it a likelihood of succeeding).

56.    To the extent any defaults exist under any assumed and assigned contracts, the defaults will be promptly cured by any Successful Bidder or Backup Successful Bidder. Adequate assurance that such default will be cured by the Successful Bidder or Backup Successful Bidder will be provided prior to the assumption and assignment.  If necessary, the Trustee will submit facts at the Sale Hearing to show the financial capability of the Successful Bidder and the Successful Bidder's willingness and ability to perform under the assumed and assigned contracts. The Sale Hearing will therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance under the assumed and assigned contracts, as required under Section 365(b)(1)(C) of the Bankruptcy Code.

57.    In addition, the Trustee submits that it is an exercise of his sound business judgment to assume and assign the assumed and assigned contracts (if any) in connection with

the consummation of the Sale, and the assumption, assignment, and sale of assumed and assigned contracts is in the best interests of the Debtors' estates, their creditors, and all parties in interest. The assumed and assigned contracts that may assigned to the Successful Bidder would be an integral part of the Indiana Assets being purchased and accordingly, the assumption, assignment, and sale of assumed and assigned contracts are reasonable and enhance the value of the Debtor's estates. The Court should therefore authorize the Trustee to assume and assign the assumed and assigned contracts as set forth herein.

### E. Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)

58.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen (14) days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

59.     Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally* 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is

filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id*.

60.     Because of the potentially diminishing value of the Indiana Assets, the Trustee must close this sale promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stays is appropriate in this circumstance.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that this Court (i) enter an order substantially in the form of the Auction Order attached hereto as Exhibit A  authorizing and approving the Auction Procedures attached as Exhibit 1 thereto and scheduling the Sale Hearing; and (ii) at the conclusion of the Sale Hearing, either enter the Sale Order: (a) approving the Sale of substantially all or a substantial portion of the Indiana Assets free and clear of all liens, encumbrances, claims and other interests; (b) authorizing the assumption and assignment of any Assumed and Assigned Contracts; or authorize the Trustee to proceed with the liquidation of the Indiana Assets with each customer on a customer by customer basis; and (iii) grant such other and further relief as it deems just and proper.

Dated:  August 4, 2018

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ Kyung S. Lee*
Kyung S. Lee (TBA No. 12128400)
R. J. Shannon (TBA No. 24108062)
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile:  (713) 333-5199

*Proposed Co-Counsel for Rodney D. Tow,
Chapter 7 Trustee for Koontz-Wagner
Custom Control Holdings LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2018, a true and correct copy of this Motion was served all parties registered to receive ECF notification in the above captioned case.

/s/Kyung S. Lee
Kyung S. Lee