THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Koontz-Wagner Custom Control | § | Case No. 18-33815 |
| Holdings LLC, | § | (Emergency Relief Requested) |
| | § | |
| Debtor. | § | (Chapter 7) |
| | § | |

### TRUSTEE'S EMERGENCY MOTION FOR ORDER AUTHORIZING SALE OF CERTAIN INVENTORY, WORK IN PROCESS AND UL LISTINGS

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, chapter 7 trustee (the "Trustee") of the estate of Koontz-Wagner Custom Control Holdings LLC (the "Debtor"), files this *Emergency Motion for Order*

Page 1 – Motion to Sell

*Authorizing Sale of Certain Inventory, Work in Process and UL Listings* (the "Motion") and respectfully states as follows:

## EMERGENCY CONSIDERATION

1. To meet Peterson's delivery deadlines, JTS needs possession of the Idaho WIP Assets no later than August 24, 2018. Accordingly, the Trustee respectfully requests that the Court consider this Motion on an emergency basis.

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested in this Motion are Sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

## CASE BACKGROUND

5. On July 11, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the above-captioned chapter 7 case (the "Case").

6. The Trustee is the chapter 7 trustee appointed in the Case.

7. Prior to the Petition Date, the Debtor fabricated enclosures and fuel tanks for its customers, including Peterson Power Systems, Inc., a creditor in the Case ("Peterson").

8. In an effort to control its workflows, the Debtor would order raw materials and begin fabricating enclosures and fuel tanks in the expectation of receiving contracts from its customers. Prior to the Petition Date, the Debtor ordered raw materials and commenced fabrication work for anticipated or negotiated orders from Peterson. Included in Exhibit 1 to this Motion are pictures of the raw materials acquired and various enclosures and fuel tanks fabricated by the Debtor in anticipation of future or current contracts with Peterson (the "Goods").

Page 2 – Motion to Sell

9.  The Goods are custom to generator and engine units sold by Peterson. If the Goods are not able to be used in connection with Peterson generator and engine units, they will need to be sold for scrap value.

10. The Goods are located at the Debtor's Idaho facility. Pursuant to Bankruptcy Code section 365(d), the Trustee has been paying monthly rent at the Debtor's Idaho facility of $25,000 per month. The Trustee must remove the Goods from the Idaho property or pay additional rent obligations to landlord of the Idaho facility.

11. Because of their size and weight, if the Trustee is required to remove the Goods from the Idaho facility, the Trustee expects to incur several thousand dollars of removal expense.

12. On August 7, 2018, the Trustee received a term sheet from Johnson Thermal Systems, Inc, an Idaho corporation ("JTS"), offering to purchase the Goods (the "Term Sheet"). Like the Debtor, JTS also fabricates enclosures and tanks for Peterson.

13. In addition to the Goods, under the Term Sheet JTS also offered to purchase from the Debtor's estate Listing Nos. EFVT.MH26349, EELU.MH17604, EEEV.MH15690, QRXA.MH49030, NITW7.E2073416 issued by Underwriters Laboratory for the Debtor's tanks and enclosures (the "UL Listings" and, together with the Goods, the "Idaho WIP Assets"). The UL Listings are required by JTS to finish construction of the partially complete enclosures and fuel tanks.[1] Because the Debtor started fabrication on the tanks and enclosures, JTS cannot complete construction on those partially completed Goods under its own UL Listing. Therefore, without a transfer of the UL Listings, the partially completed tanks and enclosures will be unusable by JTS and will need to be sold for scrap.

14. The purchase price for the Idaho WIP Assets under the Term Sheet is $282,062.80 (the "Purchase Price").

15. The Trustee has discussed sale of the Goods with other potential purchasers and Peterson, consulted with his financial advisors, and believes, in his business judgment, that the

---

[1] Prior to the Petition Date the Debtor completed certain tanks and applied its UL Listing stamp to the completed works. Those tanks can be incorporated into the finished enclosures without further stamping.

Page 3 – Motion to Sell

Purchase Price represents the highest and best value for the Idaho WIP Assets. A sale to any other purchaser aside from JTS would net lower sale proceeds to the estate.

16. On August 10, 2018, the Trustee executed and delivered the Term Sheet to JTS. A true copy of the Term Sheet is attached to this Motion as Exhibit 1.

17. Following his execution of the Term Sheet, the Trustee negotiated an asset purchase agreement for the Idaho WIP Assets on the terms provided in the Term Sheet (the "JTS Asset Purchase Agreement"). A true copy of the negotiated JTS Asset Purchase Agreement is attached to this Motion as Exhibit 2.

### RELIEF REQUESTED

18. Pursuant to 11 U.S.C. § 363, the Trustee respectfully requests the Court enter an order substantially in the form attached hereto (i) authorizing the Trustee to sell to JTS the Idaho WIP Assets free and clear of all claims, liens and interests on the terms set forth in the JTS Asset Purchase Agreement, (ii) finding that JTS is a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code, and (iii) ordering the waiver of the requirement for a 14-day stay pursuant to Bankruptcy Rule 6004(h).

### BASIS FOR RELIEF

19. A trustee may sell, after notice and a hearing, a debtor's assets outside the ordinary course of business. 11 U.S.C. § 363(b)(1). Generally, to obtain approval of a proposed sale of assets, a trustee must "satisfy its fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

20. In selling estate property under section 363, a trustee has a duty to maximize the value of the estate. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985). "As a general matter, the trustee must demonstrate that the proposed sale price is the highest and

best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal." *In re Moore*, 608 F.4d 253, 263 (5th Cir. 2010) (citing 3 COLLIER ON BANKRUPTCY ¶ 363.02[1][f] (15th ed. rev.2009).

21. Estate property may be sold free and clear of claims, liens, and other interests pursuant to section 363(f) of the Bankruptcy Code, which provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Fulfilling any of the enumerated conditions in section 363(f) is sufficient for the Sale or Sales to be free and clear. *In re Demay Int'l LLC*, 471 B.R. 510, 518 n.13 (S.D. Tex. 2012); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007).

22. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363 of a sale or lease of property does not affect the validity of such sale or lease when the purchaser bought in good faith. *See* 11 U.S.C. § 363(m). "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' most courts have adopted a traditional equitable definition: one who purchases the assets for value, in good faith and without notice of adverse claims." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted). The Fifth Circuit has clarified good faith in the context of section 363(m) of the Bankruptcy Code in two ways: (i) defining a "good faith purchaser" as "one who purchases the assets for value, in good

faith, and without notice of adverse claims" and (ii) noting that "the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re TMT Procurement Corp.*, 764 F.3d 512, 520 (5th Cir. 2014).

23. Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen (14) days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

24. Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally* 10 COLLIER ON BANKRUPTCY ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id*.

## ARGUMENT

### A. The Sale Should Be Approved

25. Selling the Idaho WIP Assets to JTS is the most efficient way to maximize value for the Debtor's estate. Because JTS continues to do work for Peterson, JTS is willing to pay the highest and best price for the Goods. Absent a sale to JTS, a significant portion of the value of the Goods will be lost and the materials will likely need to be sold for scrap value, at significant removal cost to the estate.

Page 6 – Motion to Sell

26. Second, by selling the Goods to JTS, the Trustee will best position the estate to reject the lease at the Idaho property before unnecessary rental payments come due, resulting in a significant savings to the estate.

27. Third, selling the UL Listings to JTS likewise maximizes the value of those assets along with the value of the Goods. The Debtor no longer has a use for the UL Listings and, without the UL Listings, none of the partially completed, unstamped tanks and enclosures can be used and will need to be sold for scrap.

28. For the foregoing reasons, in the Trustee's business judgment selling the Goods will result in the best recovery for the Debtor's estate and its creditors. The sale of the Idaho WIP Assets pursuant to the JTS Asset Purchase Agreement should therefore be approved.

### B. The Sale Should Be Free and Clear

29. The sale of the Idaho WIP Assets pursuant to the JTS Asset Purchase Agreement should be free and clear of any liens, claims or interests. The Debtor's schedules list two potentially secured parties. Centre Lane Partners Master Credit Fund II, L.P. ("Centre Lane") has filed UCC financing statement in Indiana. The Trustee has contacted counsel representing Centre Lane in connection with the underlying finance transaction and been informed that the Debtor is a guarantor of a loan facility to the parent from Centre Lane. This loan facility is not in default. Further, the parent company and Centre Lane are currently negotiating a refinancing of the loan facility that would remove the Debtor as a guarantor. Centre Lane will be provided notice of this Motion by mail and vial email to counsel.

30. Wells Fargo is listed as a party with a $154,590.25 secured claim described as a letter of credit. Wells Fargo will be provided notice of this motion by regular mail and by email if Trustee becomes aware of the identity of counsel to Wells Fargo in this case.

31. If Centre Lane, Wells Fargo, or any other party with a claim or interest in the Idaho WIP Assets does not object to the sale, the Idaho WIP Assets may be sold free and clear of such party's interests pursuant to section 363(f)(2) of the Bankruptcy Code. Further, with

respect to any other party asserting a claim, lien, or other interest in the Idaho WIP Assets other than Centre Lane or Wells Fargo, such interest is in bona fide dispute and may be sold free and clear of claims or interests pursuant to section 363(f)(4).

32. A sale free and clear of all claims and interests is necessary to maximize the value of the Idaho WIP Assets. A sale subject to claims, liens, and interests would result in a lower purchase price and be of substantially less benefit to the Debtor's estate. A sale free and clear of liens is particularly appropriate under the circumstances here because any lien, to or against the Idaho WIP Assets that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party in interest.

### C. JTS Is Entitled to Protections of 363(m)

33. The Trustee believes that JTS has negotiated and dealt with the Trustee at arm's length and without any indications of collusion or fraud. Under these circumstances, this Court should find in the order approving the sale of the Idaho WIP Assets that JTS is entitled to all of the protections of Bankruptcy Code Section 363(m).

### D. Fourteen-Day Stay Under Bankruptcy Rule 6004(h) Should be Waived

34. Because of the potentially diminishing value of the Idaho WIP Assets, the Trustee must close this sale promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stays is appropriate in this circumstance.

[*Remainder of Page Intentionally Left Blank*]

Case 18-33815   Document 110   Filed in TXSB on 08/17/18   Page 9 of 9

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form of the proposed order attached to this Motion, authorizing the Trustee to sell the Idaho WIP Assets to JTS on the terms detailed set forth on the JTS Asset Purchase Agreement.

Dated:  August 17, 2018

Respectfully submitted,

DIAMOND McCARTHY LLP

/s/ R. J. Shannon
Kyung S. Lee (TBA No. 12128400)
R. J. Shannon (TBA No. 24108062)
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile:  (713) 333-5199

*Proposed Special Counsel for Rodney D. Tow, Chapter 7 Trustee for Koontz-Wagner Custom Control Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2018, a true and correct copy of this Motion was served on (i) all parties registered to receive ECF notification in the above captioned case and (ii) by first class U.S.P.S. mail on all parties on the Limited Mailing List [ECF No. 109].

*/s/  R. J. Shannon*
R. J. Shannon