SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Koontz-Wagner Custom Control** | § | **Case No. 18-33815** |
| **Holdings LLC,** | § | **(Emergency Relief Requested)** |
| | § | |
| Debtor. | § | **(Chapter 7)** |

**EMERGENCY MOTION FOR ORDER (A) AUTHORIZING SALE OF HOUSTON AND CALDWELL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, OTHER THAN FOR ACCOUNTS RECEIVABLE AND (B) WAIVING APPLICATION OF STAY <u>PURSUANT TO BANKRUPTCY RULES 6004</u>**

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, in his capacity as chapter 7 trustee (the "<u>Trustee</u>") for the estate of Koontz-Wagner Custom Control Holdings, LLC. (the "<u>Debtor</u>"), files this emergency motion

(the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 2002, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form annexed hereto (the "Proposed Order"), (i) authorizing the Trustee to sell the Houston and Caldwell Assets (defined below) free and clear of liens, claims, and interests pursuant to the terms sheet attached hereto as Exhibit 1 (the "Terms Sheet") as modified and limited by the Proposed Order and (ii) waiving the application of the stay imposed by Bankruptcy Rules 6004. In support of the Motion, the Trustee respectfully submits the following:

## EMERGENCY CONSIDERATION[1]

1. The Trustee requests that Motion be considered and entered on an emergency basis because the value of the Houston and Caldwell Assets is tied to the ability of the Purchaser to negotiate arrangements with the Debtor's former customers to complete the WIP and retain former employees of the Debtor. If the sale of the Houston and Caldwell Assets is delayed, customers who may otherwise have sought the completion of the WIP with the Houston and Caldwell Purchaser may instead elect to find other parties to complete. The Trustee believes that the value to the estate from the revenue sharing arrangements under the Proposed Houston and Caldwell Transaction will be substantially higher if the Houston and Caldwell Purchaser is able to establish successful business relationships with the Debtor's former customers. The Trustee therefore believes that emergency consideration is warranted.

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] Capitalized terms not otherwise defined in this section shall have the meanings ascribed to them elsewhere in the Motion.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a), 363(b), (f), and (m), and 365 and Bankruptcy Rules 2002, 6004, and 9006.

## BACKGROUND

**A.    Case Background**

5. On July 11, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The United States Trustee appointed the Trustee on July 11, 2018.

6. On July 11, 2018, the Trustee selected Cooper & Scully, P.C. as his general bankruptcy counsel and Diamond McCarthy, LLP as his special counsel on the sale of equipment and other assets during the chapter 7 case and issues relating to claims asserted by the customers of the Debtor.[2]

7. On July 23, 2018, the Trustee selected Commenda Asset Resolution Partners, LLC to act as financial advisor and to market certain property of the estate for sale.

8. The Debtor filed its Schedule of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA") on July 30, 2018. [ECF Nos. 68, 70].

9. On August 8, 2018, the Clerk of the Court filed the *Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims* [ECF No. 91] (the "Notice of Assets").

10. The meeting of creditors pursuant to Bankruptcy Code § 341 has not yet been scheduled by the office of the United States Trustee.

---

[2] Diamond McCarthy LLP has also assisted with certain additional matters where directed by the Trustee and necessary and appropriate under the circumstances. Diamond McCarthy LLP and Cooper & Scully, P.C. attorneys have coordinated to avoid duplication of work in this case.

**B.     The Debtor's Business and Assets**

11.     The Debtor was in the business of manufacturing and integrating control house enclosures for gas turbines, electric generators, oil and gas pipeline compressor stations, electric transmission and distribution systems, and other applications.  Suppliers of various related components consigned their products to the Debtor (the "Customer Equipment"), and the Debtor integrated the Customer Equipment into a customizable control house for delivery to the end user (the "Fabrication Work").

12.     The Customer Equipment provided to the Debtor was often equipment of significant value to the suppliers and critical to the ultimate project.  As such, the timely construction and integration of the Fabrication Work was essential to the Debtor's business.

13.     The Debtor operated its business out of four principal locations: (1) South Bend, Indiana; (2) Caldwell, Idaho; (3) Houston, Texas; and (4) Chattanooga, Tennessee.

14.     Prior to the Petition Date, the Debtor began efforts to sell substantially all of its business and assets.

15.     With respect to the Chattanooga facility, the Debtor had wound-up operations prior to the Petition date and started a process of liquidating the remaining assets, which the Trustee has completed post-petition.

16.     On the other hand, the Trustee believes that the Debtor's business segments at the South Bend, Caldwell, and Houston locations may have going-concern value in addition to being attractive to strategic purchasers seeking to finish works-in-process ("WIP")—comprising Customer Equipment and Fabrication Work—the contracts or purchase orders ("Purchase Orders") under which the WIP was produced, fixed assets and equipment, intellectual property, accounts receivable, and other assets.

17. The Debtor partially completed projects for several customers prior to the Petition Date. The WIP and the associated Purchase Orders have value because an entity in the same business as the Debtor or entering into the same business as the Debtor can (i) acquire the Fabrication Work and negotiate the completion of the WIP with the customer or (ii) receive assignment of the Purchase Order. This forms a large portion of the potential value of the bankruptcy estates.

18. Because of the urgent nature of the Debtor's business, however, the Fabrication Work retains value only if the WIP can be completed within a timeframe that allows the purchaser to get up to speed on a project, negotiate with the customer regarding the completion of the WIP, and deliver the completed work incorporating the Customer Equipment to the customer in a timely and cost-effective manner. In the event of substantial delay, the customers can cover the Purchase Order with third parties and setoff against accounts receivable

19. The Debtor had significant accounts receivable owed to the Debtor by the Debtor's former customers. The Trustee believes, however, that certain of these former customers will attempt to assert setoff rights or recoupment defenses unless a purchaser of the Debtor's assets is able to complete the customer's WIP or otherwise develop an ongoing business relationship. Such a purchaser is significantly more likely to collect the accounts receivable than the Trustee. Further, to the extent that a purchaser is able to timely complete WIP, the potential damages giving rise to asserted setoff rights may be avoided.

C.  **Marketing of the Debtor's Assets**

20. For approximately one year prior to the Petition Date, the Debtor engaged in extensive marketing of its business and assets for sale, and in particular the assets related to the Debtor's facilities in Caldwell and South Bend. These efforts were led by Commenda Capital, LLC ("Commenda").

21. Commenda contacted many potential purchasers of the Debtor and participated in negotiations with several of these potential purchasers. While Commenda did not locate a buyer, these potential purchasers investigated the Debtor's business and assets extensively prior to the Petition Date.

22. Prior to the Petition Date, the Debtor created a virtual data room in connection with its efforts to sell its business. This data room was maintained by the Debtor's parent company, Williams Industrial Services Group Inc. ("Williams"). Williams has agreed to continue to maintain the data room on behalf of the Trustee on a limited post-petition basis.

23. Using the data room, as supplemented by the Trustee's investigation of the Debtor's financial condition, and Comenda's knowledge of the parties potentially interested in the Debtor's business, the Trustee and Commenda have engaged in an intense 24/7 marketing process over the past two weeks. The Trustee ultimately provided due diligence materials to twenty (20) parties to solicit bids on the either the Debtor's entire business or a substantial part thereof. The Trustee fielded offers from and entered into negotiations with certain of these parties, some of which negotiations are ongoing.

24. Given the expedited timeframe needed with respect to the completion of the WIP and Purchase Orders, the Trustee sent form term sheets on Wednesday, August 1, 2018, to parties having expressed interest in the estates assets and to seek a stalking horse bidder. Although the Trustee did not select a stalking horse, multiple parties made offers for the estate's assets and several parties expressed interest in bidding at an auction after additional due diligence.

25. On August 4, 2018, the Trustee filed an emergency motion [ECF No. 81] seeking an order scheduling an auction and approving auction procedures, pursuant to which the Trustee

would seek the entry of an order authorizing the sale of all or a substantial portion of the assets related to the Indiana facility. Certain customers of the Debtor—Siemens Industry, Inc. [ECF No. 100]; Siemens Energy, Inc. [ECF No. 100]; Enbridge Energy, Limited Partnership [ECF No. 101]; and ABB Industrial Connections and Solutions LLC [ECF No. 102] (together the "Auction Objecting Parties")—objected on various grounds.[3] The Court declined to enter an order approving an auction and indicated that the Trustee did not need an order to hold negotiations for the sale of assets with multiple parties to be approved by separate motion.

26. The Trustee conducted a series of negotiations broadly in line with the proposed auction procedures on August 5, 2018. As the result of these negotiations, the Trustee arrived at agreements with respect to (1) the sale of substantially all assets of the estate with respect to the Debtor's Indiana facilities to a group comprising KW Custom Controls, LLC,[4] (2) the sale of sale of substantially all assets with respect to the Debtor's Idaho and Texas facilities to PPL Acquisition Group I, LLC, and (3) a partial resolution of the release of the Siemens WIP. Additionally, substantial progress was made with respect to the ultimate resolution of the Enbridge WIP.

D. **Proposed Houston and Caldwell Transaction**

27. As a result of the negotiations on August 15, 2018, the Trustee and PPL Acquisition Group I, LLC (the "Houston and Caldwell Purchaser") agreed to the sale of certain assets related to the Debtor's facilities in Houston, Texas and Caldwell, Idaho as set forth in the

---

[3] Siemens objected due to perceived lack of notice and because the requirements of Bankruptcy Code § 365. Enbridge objected to the extent that executory contracts would be assumed and assigned because adequate assurance of performance had not been demonstrated. ABB objected on grounds that the sale of the works in process included property that is not property of the estate, sale free and clear of liens, claims, and interests would deprive ABB of setoff rights, and cure of defects and adequate assurance with respect to executory contracts had not been demonstrated. The Trustee addressed these concerns at the hearing on August 14, 2018, and further addresses these concerns in this Motion.

[4] KW Custom Controls, LLC is a business entity created to continue the business of the Debtor.

7

terms sheet attached hereto as <u>Exhibit 1</u>. The essential terms of the proposed transaction (the "<u>Proposed Houston and Caldwell Transaction</u>") are as follows:

| *Term* | *Description* |
|---|---|
| "<u>Cash Consideration</u>" | $917,000 to be paid to the estate at closing. |
| "<u>A/R Revenue Sharing</u>" | For all current accounts receivable sold, the Houston and Caldwell Purchaser will pay 30% of gross amount collected to the estate within 45 days of collection. |
| "<u>WIP Revenue Sharing</u>" | For all WIP completed by the Houston and Caldwell Purchaser, the Houston and Caldwell Purchaser will pay 30% of net collections to the estate. |
| | To the extent a former customer of the Debtor elects to "opt-out" of the sale of its Fabrication Work pursuant to the Proposed Order and the estate collects funds from the sale of the Fabrication Work separately or as a result of scrapping the Fabrication Work, the estate will pay 70% of net collections to the Houston and Caldwell Purchaser.[5] |
| "<u>Houston and Caldwell Assets</u>" | All assets owned by the estate, other than Customer Equipment and Fabrication Work of customers of the Debtor who opt-out prior to closing, at the Debtor's Houston and Caldwell facilities, including all machinery and equipment, inventory, accounts receivable, and intellectual property. |

28.     The Trustee and the Houston and Caldwell Purchaser arrived at the above terms after extensive arms-length negotiations and after the Trustee's extensive marketing of the Houston and Caldwell Assets. The Trustee believes that the above transaction represents the highest and best offer that the estate can obtain. Further, the Trustee believes that there was no collusion between the Houston and Caldwell Purchaser and other potential bidders.

---

[5] The Trustee will engage in discussions with the Houston and Caldwell Purchaser regarding how discounts to accounts receivable and amounts due for WIP completion will be addressed to ensure that discounts are not given to the detriment of the estate.

### E.  Procedures for Opt-Out of Sale of Fabrication Work

29. As set forth in the Term Sheet, the Proposed Indiana Transaction (i) provides for the sale of only property of the bankruptcy estate (and thus does not sell any goods or general intangibles owned by any other party), (ii) allows for the estate to release customers' WIP to the respective customer prior to closing, and (iii) provides a mechanism for customers to opt out of having the Fabrication Work related to the customer's WIP sold to the Houston and Caldwell Purchaser. The Proposed Order sets forth a procedure for opting-out of the sale of Fabrication Work (the "Opt-Out Procedure").

30. As set forth in the Proposed Order, an entity seeking to opt-out of the sale of the Fabrication Work related to its WIP must file with the Court a notice of its intent to opt-out on or before the later of (a) seven days after the entry of an order approving the Proposed Houston and Caldwell Transaction or (b) the closing of the Proposed Houston and Caldwell Transaction pursuant thereto. A form notice is attached as Exhibit 2 hereto.

31. The Fabrication Work related to the substantially completed building for the entity related to Cummins Inc., which Fabrication Work and Customer Equipment are located at the Caldwell facility, will not be transferred pursuant to the Proposed Order and the Houston and Caldwell Purchaser will not receive any funds under the WIP Revenue Sharing arrangement for any agreement between the Trustee and such Cummins Inc. entity.

### **RELIEF REQUESTED**

32. By this Motion, the Trustee requests the entry of an order substantially in the form of the Proposed Order (i) authorizing the Trustee to sell the Houston and Caldwell Assets free and clear of liens, claims, and interests pursuant to the Terms Sheet as modified and limited by

9

the Proposed Order and (iv) waiving the application of the stay imposed by Bankruptcy Rule 6004.

## BASIS FOR RELIEF

**A. The Proposed Houston and Caldwell Transaction Should Be Authorized**

33. A trustee may sell, after notice and a hearing, estate assets outside the ordinary course of business. 11 U.S.C. § 363. To obtain approval of a proposed sale of assets, a trustee must "satisfy its fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). Generally, the trustee can make this showing by "demonstrate[ing] that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as a substantial doubt that the higher bidder can raise the cash necessary to complete the deal." *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) (citing 3 *Collier on Bankruptcy* ¶ 363.02[1][f] (15th ed. rev.2009)). Unlike a chapter 11 case, where the ultimate rehabilitation and reorganization of a debtor is possible and often in the best interests of creditors, chapter 7 of the bankruptcy code contemplates that "[t]he trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest . . . ." 11 U.S.C. § 704. Further, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

34. Sound business purposes justify the Proposed Houston and Caldwell Transaction. The Proposed Houston and Caldwell Transaction is the culmination of substantial marketing efforts the Debtor and the Trustee and arms'-length negotiations between the Houston and

10

Caldwell Purchaser and the Trustee. As described above, in other pleadings in this case, and in Court, the Trustee solicited all bids for the Indiana Assets through a structured negotiation process on August 15, 2018. The Proposed Houston and Caldwell Transaction was the highest and best offer, providing both the most cash consideration to the estate, but also with respect to likelihood of finishing the WIP and ability to monetize the open accounts receivable and reduce claims against the estate.

> **B.    The Houston and Caldwell Purchaser Should Be Granted the Protections of Section 363(m) of the Bankruptcy Code**

35.    The Trustee also maintains that the Houston and Caldwell Purchaser should be entitled to the protections afforded by Bankruptcy Code Section 363(m).

36.    Bankruptcy Code Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

37.    While the Bankruptcy Code does not define "good faith," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted); *see In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case,

concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). The Fifth Circuit has clarified good faith in the context of section 363(m) of the Bankruptcy Code in two ways: (i) defining a good faith purchaser as "one who purchases the assets for value, in good faith, and without notice of adverse claims" and (ii) noting that "the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re TMT Procurement Corp.*, 764 F.3d 512, 520 (5th Cir. 2014).

38. There were no indications of improper collusion between the Houston and Caldwell Purchaser and other potential bidders. As the evidence at the hearing on this Motion will demonstrate, the Houston and Caldwell Purchaser negotiated with the Trustee at arms-length and in good faith, without any indications of collusion or fraud. Under these circumstances, this Court should find in the order approving the Proposed Houston and Caldwell Transaction that the Houston and Caldwell Purchaser is entitled to all of the protections of Bankruptcy Code Section 363(m).

### C. Sale of the Houston and Caldwell Assets Should Be Free and Clear of Claims and Interests, Subject to Exceptions in Proposed Order

39. Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell and transfer the Houston and Caldwell Assets to the Houston and Caldwell Purchaser free and clear of all claims, liens, or other interests to attach to the proceeds of the sale of the Houston and Caldwell Assets, subject to any rights and defenses of the Trustee and other parties in interest with respect thereto. Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Fulfilling any of the enumerated conditions in section 363(f) is sufficient for the sale pursuant to the Proposed Houston and Caldwell Transaction to be free and clear. *In re Demay Int'l LLC*, 471 B.R. 510, 518 n.13 (S.D. Tex. 2012); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007).

40.    The Debtor's schedules list two potentially secured parties. Centre Lane Partners Master Credit Fund II, L.P. ("Centre Lane") has filed UCC financing statement in Indiana. The Trustee has contacted counsel representing Centre Lane in connection with the underlying finance transaction and been informed that the Debtor is a guarantor of a loan facility to the parent from Centre Lane. This loan facility is not in default. Further, the parent company and Centre Lane are currently negotiating a refinancing of the loan facility that would remove the Debtor as a guarantor. Centre Lane will be provided notice of this Motion by mail and vial email to counsel.

41.    Wells Fargo is listed as a party with a $154,590.25 secured claim described as a letter of credit. Wells Fargo will be provided notice of this motion by regular mail and by email if Trustee becomes aware of the identity of counsel to Wells Fargo in this case.

42.    If Centre Lane, Wells Fargo, or any other party with a claim or interest in the Houston and Caldwell Assets does not object to the sale, the Houston and Caldwell Assets may

be sold free and clear of such party's interests pursuant to section 363(f)(2) of the Bankruptcy Code. Further, with respect to any other party asserting a claim, lien, or other interest in the Houston and Caldwell Assets other than Centre Lane or Wells Fargo, such interest is in bona fide dispute and will be sold free and clear of claims or interests pursuant to section 363(f)(4).

43. The Proposed Order does not contemplate that that all of the Houston and Caldwell Assets be sold free and clear of all liens, claims, and interests. The Proposed Order expressly provides that all accounts receivable will be sold pursuant to rights of setoff and any other defense that could have been raised against the estate.

44. With respect to the other Houston and Caldwell Assets, sale free and clear of all claims, liens, and other interests is necessary to maximize the value of the Houston and Caldwell Assets. A sale subject to claims, liens, and interests would result in a lower purchase price and be of substantially less benefit to the Debtor's estate. A sale free and clear of liens is particularly appropriate under the circumstances here because any lien, to or against the Houston and Caldwell Assets that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party in interest.

**D.    The Fabrication Work Opt-Out Procedure Provides and Adequate Means for the Debtor's Customers to Remove Their WIP From Being Affected by the Proposed Indiana Transaction**

45. The Trustee believes that all Fabrication Work related to the WIP is property of the estate. Nonetheless, the Houston and Caldwell Purchaser has agreed to the Opt-Out Procedures with respect to the Fabrication Work portion of the WIP. ***No Customer Equipment will be sold pursuant to the Proposed Order.***

### E.     Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h)

46.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order.. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

47.     Although Bankruptcy Rules 6004(h) and the Advisory Committee Note are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally,* 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

48.     Because of the potentially diminishing value of the Houston and Caldwell Assets with respect to the ability of the Houston and Caldwell Purchaser to negotiate with customers for completion of the WIP, the Trustee must close this sale promptly after all closing conditions have been met or waived. Thus, waiver of any applicable stays is appropriate in this circumstance.

### CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order (i) authorizing the Trustee to sell the Houston and Caldwell Assets free and clear of liens, claims, and interests pursuant to the Terms Sheet as modified and limited by the Proposed Order; and (ii) waiving the application of the stay imposed by Bankruptcy Rule 6004.

Dated:  August 29, 2018  	Respectfully submitted,

DIAMOND McCARTHY LLP

 */s/ R. J. Shannon*
Kyung S. Lee (TBA No. 12128400)
R. J. Shannon (TBA No. 24108062)
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile:  (713) 333-5199

*Proposed Special Counsel for Rodney D. Tow, Chapter 7 Trustee for Koontz-Wagner Custom Control Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2018, a true and correct copy of this Motion was served on (i) all parties registered to receive ECF notification in the above captioned case and (ii) by first class U.S.P.S. mail on all parties on the Amended Limited Mailing List [ECF No. 112].

*/s/R. J. Shannon*
R. J. Shannon