**THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Koontz-Wagner Custom Control** | § | **Case No. 18-33815** |
| **Holdings LLC,** | § | |
| | § | |
| Debtor. | § | (Chapter 7) |
| | § | |

**ORDER (A) AUTHORIZING SALE OF HOUSTON AND CALDWELL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, OTHER THAN FOR ACCOUNTS RECEIVABLE AND (B) WAIVING APPLICATION OF STAY PURSUANT TO BANKRUPTCY RULE 6004**

[Relating to ECF No. ___]

The Court, having considered the *Emergency Motion for Order (A) Authorizing Sale of Houston and Caldwell Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, Other Than for Accounts Receivable and (B) Waiving Application of Stay Pursuant to Bankruptcy Rule 6004* (the "Motion")[1] any responses to the Motion, the statements of counsel, and the record in this case, and having held a hearing on the Motion, finds that: (a) it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest; (d) proper and adequate notice of the Motion and hearing hereon has been given and no other or further notice is necessary; (e) one or more of the conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Trustee may sell the Houston and Caldwell Assets free of any claims, liens or interests except as otherwise provided in this Order; (f) the consideration for the Houston and Caldwell Assets represents the highest and best value to the estate for such assets; (g) the sale of

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the Houston and Caldwell Assets to the Houston and Caldwell Purchaser represents an arms'-length transaction and has been negotiated in good faith between the parties; (h) the Houston and Caldwell Purchaser is a good faith purchaser of the Houston and Caldwell Assets under Section 363(m) of the Bankruptcy Code; (i) the Trustee has demonstrated that emergency relief is necessary to avoid loss to the Debtor's estate, and (j) good and sufficient cause exists for the granting of the relief requested.  Therefore, it is **ORDERED**:

1.	All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion, are overruled.

2.	The Trustee is authorized to enter into the asset purchase agreement attached hereto as Exhibit A (the "APA") and sell all of the tangible and intangible assets that are (i) used or held for use or located in the Debtor's business in its Houston, Texas and Caldwell, Idaho facilities and (ii) owned by the estate, other than Customer Equipment that is not property of the estate and Fabrication Work removed from the purchased assets according to the Opt-Out Procedure, including, without limitation, all machinery and equipment, inventory, accounts receivable, and intellectual property (the "Houston and Caldwell Assets") in exchange for the sum of $917,000 to be paid by the Houston and Caldwell Purchaser to the Trustee at closing, 30% of  gross collections on open accounts receivable to be paid by the Houston and Caldwell Purchaser to the Trustee within 45 days of receipt, and 30% of net collections associated with current jobs and work-in-process inventory to be paid by the Houston and Caldwell Purchaser to the Trustee within 45 days of receipt (the "Estate Compensation").

3.	The Fabrication Work related to the WIP of any entity that files a notice with the Court substantially in the form attached to the Motion as Exhibit 2 on or before the later of seven

(7) days after the entry of this order or the closing under the APA shall remain property of the estate and not be transferred to the Houston and Caldwell Purchaser pursuant to the APA.

4.      The Fabrication Work related to the substantially completed building for the entity related to Cummins Inc., which is located at the Caldwell facility, shall not be transferred pursuant to this Order or the APA and the Houston and Caldwell Purchaser will not receive any funds under the WIP Revenue Sharing arrangement for any agreement between the Trustee and such Cummins Inc. entity.

5.      Notwithstanding anything in this Order or the APA to the contrary, the Trustee is not transferring any claims related to post-petition actions or events, including but not limited to violations of the automatic stay, conversion of estate property, and similar rights to payment from Johnson Thermal Systems, David Erlebach, or related parties.

6.      The sale of the Houston and Caldwell Assets pursuant to the APA and this Order shall be free and clear of all liens, claims, encumbrances, or other interests to the fullest extent allowed under 11 U.S.C. § 363(f), except that any accounts receivable transferred to the Houston and Caldwell Purchaser shall remain subject to the same rights to setoff and any other defenses as if owned by the Trustee. All claims, liens and interests in the Houston and Caldwell Assets shall attach to the net proceeds arising from the sale of the Houston and Caldwell Assets with the same force, validity, effect, priority and enforceability as such claims, liens and interests had prior to the date of sale.  Any issues regarding the extent, validity, perfection, priority and enforceability of such claims, liens and interest with respect to any net sale proceeds shall be determined by the Court upon proper application at a later date.

7.      This Order shall be binding in all respects upon (a) the Trustee, (b) the Debtor's estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders of liens,

claims or other interests (whether known or unknown) in, against or on all or any portion of the Houston and Caldwell Assets, (e) the Houston and Caldwell Purchaser and all successors and assigns of the Houston and Caldwell Purchaser, (f) the Houston and Caldwell Assets and (g) any subsequent trustee(s) in this case.

8.      The Houston and Caldwell Purchaser is a good faith purchaser of the Houston and Caldwell Assets under Section 363(m) of the Bankruptcy Code and, as such, is entitled to full protection of Section 363(m) of the Bankruptcy Code.

9.      Pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Houston and Caldwell Assets to the Houston and Caldwell Purchaser, or the transactions contemplated and/or authorized by this Order, unless the same is stayed pending appeal prior to the closing on the sale of the Houston and Caldwell Assets.

10.      If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Houston and Caldwell Assets shall not have delivered to the Trustee or the Houston and Caldwell Purchaser prior to closing the sale under the APA, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Houston and Caldwell Assets, the Trustee is hereby authorized and directed, and the Houston and Caldwell Purchaser is hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Houston and Caldwell Assets.

11.     The APA was negotiated, proposed and entered into by the Trustee and the Houston and Caldwell Purchaser without collusion, in good faith and from arms'-length bargaining positions.

12.     The Houston and Caldwell Purchaser is not an "insider" or "affiliate" of the Debtor as those terms are defined in the Bankruptcy Code.  Neither the Trustee nor the Houston and Caldwell Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Houston and Caldwell Purchaser has not acted in a collusive manner with any person, and the aggregate price paid by the Houston and Caldwell Purchaser for the Houston and Caldwell Assets was not controlled by any agreement among the bidders.

13.     The Estate Compensation (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Houston and Caldwell Assets, (iii) will provide a greater recovery for the estate than would be provided by any other available alternative and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  No other person, entity or group of entities has offered to purchase the Houston and Caldwell Assets for greater economic value to the estate than the Houston and Caldwell Purchaser.  The Trustee's determination that the APA constitutes the highest or otherwise best offer for the Houston and Caldwell Assets constitutes a valid and sound exercise of the Trustee's business judgment.  Approval of the Motion and the APA, and the consummation of the transactions contemplated thereby, is in the best interests of the estate, creditors and other parties-in-interest.

14.     The Houston and Caldwell Purchaser is not a mere continuation of the Debtor or the Debtor's estate and there is no continuity of enterprise between the Houston and Caldwell Purchaser and the Debtor.  The Houston and Caldwell Purchaser is not holding itself out to the public as a continuation of any of the Debtor.  The Houston and Caldwell Purchaser is not a successor to the Debtor or the Debtor's estate and the sale does not amount to a consolidation, merger or de facto merger of the Houston and Caldwell Purchaser and the Debtor.

15.     This Order is a final order (as opposed to an interlocutory order) and is enforceable upon entry.  To the extent necessary under Bankruptcy Rules 5003, 9014, 9021 and 9022, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

16.     The fourteen-day automatic stay imposed by Bankruptcy Rule 6004(h) does not apply.  Accordingly, this Order is subject to immediate execution and fulfillment by the Trustee and the Houston and Caldwell Purchaser.

17.     The Trustee is authorized to take any actions reasonably necessary to effectuate the relief granted by this Order.

18.     To the extent that the provisions of the APA and this Order are in conflict, this Order controls.

19.     The Court retains jurisdiction to hear and determine all disputes arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____, 2018

_____
**UNITED STATES BANKRUPTCY JUDGE**

# **EXHIBIT A**

**Asset Purchase Agreement for Houston and Caldwell Assets**

# ASSET PURCHASE AGREEMENT

**PARTIES:**

RODNEY D. TOW, in his capacity as Chapter 7 Trustee (the "**Trustee**") for the Bankruptcy Estate of Koontz-Wagner Custom Control Holdings, LLC ("**Debtor**"), Case No. 18-33815, United States Bankruptcy Court (the "**Bankruptcy Court**") for the Southern District of Texas ("**Seller**"); and

K-W TEXAS LLC, a Delaware limited liability company ("**Purchaser**").

**RECITAL:**

Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Houston and Caldwell Assets (as defined below) in accordance with the terms and conditions of this Purchase Agreement (this "**Agreement**").

**AGREEMENTS:**

1.    SALE OF ASSETS.  Purchaser agrees to purchase from Seller and Seller agrees to sell to Purchaser the following assets (the "**Houston and Caldwell Assets**") in accordance with the terms of this Agreement:

1.1    All tangible and intangible assets, wall-to-wall, floor-to-ceiling fence-to-fence, boundary-to-boundary, that are used or held for use in the Debtor's business or located at its Houston, Texas facility at 6510 Bourgeois Rd, Houston, TX 77066 or its Caldwell, Idaho facility at 20394 Pinto Lane, Caldwell, ID 8360, including without limitation: those assets identified on attached <u>Exhibit A</u> and all machinery and equipment, inventory, accounts receivable, and intellectual property, other than:

a.    subject to <u>Section 4.2</u> below, Fabrication Work with respect to which a customer elected otherwise pursuant to the Opt-Out Procedure and Customer Equipment (both as defined in the *Emergency Motion for Order (A) Authorizing Sale of Houston and Caldwell Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, Other Than for Accounts Receivable and (B) Waiving Application of Stay Pursuant to Bankruptcy Rule 6004* (such order, in form and substance acceptable to Purchaser, the "**Sale Order**")), but excluding the proceeds of such Fabrication Work payable pursuant to Section 4.2 below,

b.    fixtures (other than cranes),

c.    cranes located at the Houston, Texas facility, and

d.    the items reflected on <u>Exhibit B</u>.

For the avoidance of doubt, the Houston and Caldwell Assets shall not include any chemicals, pollutants, radioactive material, contaminants, wastes, toxic or hazardous substances, materials or wastes, petroleum and petroleum products, asbestos or asbestos-containing materials or products, polychlorinated biphenyls, lead or lead-based paints or materials, radon, fungus, mold, mycotoxins, nanoparticles or other substances that may have an adverse effect on human health or the environment (collectively, "**Hazardous Materials**").

2.     NO ASSUMPTION OF LIABILITIES.  Purchaser shall in no event assume, be bound by, or be liable or responsible in any way for any liability or obligation of Seller or the Debtor.  Seller shall retain full responsibility for all of its and the Debtor's liabilities and obligations, whether known or unknown, liquidated or unliquidated, contingent, fixed, accrued or disclosed, including, without limitation, any liabilities (a) with respect to employees or former employees of Seller or the Debtor; (b) arising under the Worker Adjustment and Restraining Notification Act, 29 U.S.C. Section 2101 et seq.; (c) arising under the Consolidated Omnibus Budget Reconciliation Act, as amended (COBRA); (d) for any tax of any kind or nature, including (i) any tax which may become payable by reason of the sale and transfer of the Houston and Caldwell Assets, or be imposed upon Seller or its affiliates by reason of receipt of the consideration payable for the Houston and Caldwell Assets and (ii) any tax arising from the ownership or operation of the Houston and Caldwell Assets prior to the Closing Date; (e) related to any claims for personal liability; (f) in connection with any release or disposal of any Hazardous Materials into the environment; and (g) for any claims, interest or liens in any of the Houston and Caldwell Assets.

3.     PAYMENT TERMS.

3.1     Purchaser agrees to purchase and to pay the following consideration for the Houston and Caldwell Assets:

a.     (i) cash in the amount of $917,000 U.S. Dollars, *less* (ii) 70% of the amounts received by the Trustee for any Fabrication Work sold or otherwise disposed of prior to the Closing in accordance with Section 4.2 below (the "**Cash Consideration**");

b.     30% of Purchaser's gross collections on all accounts receivable outstanding as of the Closing (as defined below) and that constitute Houston and Caldwell Assets (the "**A/R Revenue Share**"); and

c.     30% of net collections by Purchaser of all current (but uncompleted) jobs and work-in-process inventory, in each case outstanding as of the Closing and that constitute Houston and Caldwell Assets (the "**Purchaser WIP Revenue Share**").

3.2     Payment of the Cash Consideration shall be due within 48 hours of satisfaction of Purchaser Closing Conditions (as defined below).

3.3     Payment of the A/R Revenue Share and Purchaser WIP Revenue Share shall be payable to Seller, in cash, within 45 days of receipt by Purchaser of cash from customers in respect of accounts receivable or work-in-process inventory included within Houston and

Caldwell Assets.  Purchaser shall provide Seller with a reasonable accounting in support of A/R Revenue Share and Purchaser WIP Revenue Share.

3.4     At the close of business on the date immediately preceding the Closing Date, Seller shall provide Purchaser with the details as to all amounts received by the Trustee for Fabrication Work sold or otherwise disposed of during the period commencing on the date of this Agreement and ending on the day prior to the Closing Date.

3.5     Seller will retain a lien on all accounts receivable outstanding as of the Closing (as defined below) and that constitute Houston and Caldwell Assets and the proceeds thereof until such time as Seller has received its A/R Revenue Share of such accounts receivable in accordance with Section 3.1(a) above.

4.     FABRICATION WORK OPT-OUT

4.1     Subject to Section 4.2 below, to the extent that any of the Debtor's former customers elects to opt-out of the sale of the Fabrication Work related to its projects pursuant to the Sale Order, such Fabrication Work will remain property of the estate.

4.2     To the extent that Trustee sells, disposes of for consideration, or otherwise liquidates Fabrication Work that constitutes part of the Houston and Caldwell Assets, the Trustee shall pay 70% of the net amounts received, not including any holdback amount that is not property of the estate, to Purchaser.  With respect to any amounts received by the Trustee during the period commencing on the date of this Agreement and ending on the day prior to the Closing Date, the Cash Consideration payable at Closing shall be reduced by 70% of such net amounts received in accordance with Section 3.1(a)(ii).  With respect to any amounts received by the Trustee from and after the Closing, the Trustee shall pay over 70% of such net amounts to Purchaser promptly following the receipt thereof.  Upon Purchaser's request, the Trustee shall provide Purchaser with the details as to all amounts received by the Trustee for Fabrication Work sold or otherwise disposed of as of the date of such request.

5.     TITLE, RISK OF LOSS.  Title and risk of loss to the Houston and Caldwell Assets shall pass to Purchaser at the Closing.

6.     CLOSING.  The consummation of the transactions contemplated under this Agreement (the "**Closing**" and the date of Closing, the "**Closing Date**") shall take place at the offices of Seller, or at such other place mutually acceptable to Seller and Purchaser, as promptly as practicable after satisfaction of the Purchaser Closing Conditions or at such other date and time as may be agreed to by the parties.

7.     REPRESENTATIONS AND WARRANTIES OF SELLER.  Seller hereby represents and warrants to Purchaser as follows

7.1     Seller is the Chapter 7 Trustee of Debtor. Seller, subject to the entry and effectiveness of the Sale Order (as defined below), has the requisite power and authority to execute and deliver this Agreement and all other agreements, instruments and documents contemplated hereby to be executed and delivered by it.  Subject to the entry and effectiveness of

the Sale Order, this Agreement has been duly and validly executed and delivered by Seller and (assuming this Agreement constitutes a valid and binding obligation of Purchaser and upon the entry and effectiveness of the Sale Order) constitutes a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms.  Subject to the entry and effectiveness of the Sale Order, neither the execution and delivery of this Agreement or any other agreement, instrument or document contemplated hereby to be executed and delivered by Seller nor the performance of the obligations of Seller hereunder or thereunder will result in the (i) violation of any applicable law, (ii) require any filing with or permit, consent or approval of, or the giving of any notice to, any person (including filings, consents or approvals required under any permits and licenses to which Seller is a party), (iii) result in a violation or breach of, conflict with, constitute (with or without due notice or lapse of time or both) a default under, or give rise to any right of termination, cancellation or acceleration of any right or obligation of Seller or to a loss of any benefit to which Seller is entitled under, any contract binding upon Seller or any of the permits and licenses, franchises or other similar authorizations held by Seller, or (iv) result in the creation or imposition of any Lien on any asset of Seller.

7.2    No consent, approval or authorization of, or declaration, filing or registration with, any governmental authority is required to be made or obtained by Seller in connection with the execution and delivery of this Agreement or any other agreement, instrument or document contemplated hereby to be executed and delivered by Seller or the performance of the obligations of Seller hereunder or thereunder, except for (i) consents, approvals or authorizations of, or declarations or filings with, the Bankruptcy Court in connection with the entry and effectiveness of the Sale Order, (ii) the filing of such assignments or other conveyance documents as may be required to transfer Seller's interest in any Houston and Caldwell Assets, and (iii) the filing of such documents as may be necessary to reflect the release of any liens as a matter of public record.

7.3    Seller will deliver good and marketable title to the Houston and Caldwell Assets.  Subject to entry and effectiveness of the Sale Order, at the Closing, Seller will transfer to Purchaser good and marketable title to all of the Houston and Caldwell Assets, free and clear of all free and clear of all liens, claims, encumbrances and other interests, other than accounts receivable.

7.4    Seller has disclosed to Purchaser all material facts known to it relating to Debtor, the business of Debtor, and the Houston and Caldwell Assets, including but not limited to those contained within the docket entries supplied by Seller to Purchaser prior to the date of this Agreement.

8.    COVENANTS OF SELLER:

8.1    Seller will file a motion to extend the time to assume or reject executory contracts and unexpired leases through October 31, 2018 and guarantee occupancy to Purchaser through October 31, 2018, subject to Purchaser payment costs associated with such occupancy, including rent, ad valorem taxes, and commercially reasonable insurance listing Seller as an additional insured party.  Debtor shall pay all cure costs payable with respect to any assumption of Debtor's real property leases at the Houston, Texas and Caldwell, Idaho facilities.

8.2     Purchaser shall have access to the Houston, Texas facility and the Caldwell, Idaho facility, upon Purchaser's request and at such reasonable times in order for Purchaser to conduct a public auction of the Houston and Caldwell Assets.

8.3     Seller is solely responsible for identifying, labeling, and segregating any property at Premises not owned by Seller and therefore excluded from the Goods.  Seller hereby agrees to indemnify Purchaser against any and all claims from third parties claiming ownership of property.

8.4     All transfer, conveyance, recording and similar taxes, including all such state and local taxes, incurred in connection with the transfer of the Houston and Caldwell Assets, and all recording and filing fees (collectively, "**Transaction Taxes**"), that are imposed solely as a result of the sale, transfer, assignment and delivery of the Houston and Caldwell Assets shall be borne by Seller.  Purchaser and Seller shall cooperate to (a) determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement, (b) provide all requisite exemption certificates and (c) prepare and file any and all required tax returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

8.5     Seller shall remain responsible for, and Purchaser shall have no liability for, any sales taxes, use taxes, payroll taxes, and other taxes which are then due and owing with respect to the Houston and Caldwell Assets attributable to tax periods or portions thereof ending on or prior to the Closing Date.  All real property taxes with respect to the Houston and Caldwell Assets that accrue during, or attributable to, the period on or prior to the Closing Date and become due on or after the Closing Date shall be paid by Seller, and all real property taxes with respect to the Houston and Caldwell Assets that both accrue and are due after the Closing Date shall be paid by Purchaser.  Seller shall be responsible for all sales taxes, use taxes, personal property taxes and other ad valorem taxes with respect to the Houston and Caldwell Assets that accrue during, or attributable to, the calendar year ending December 31, 2018.

9.     CONDITIONS TO PURCHASER'S OBLIGATIONS.   The obligation of Purchaser under this Agreement to deliver to Seller the Purchase Price shall be subject to the satisfaction (or waiver, in writing, by Purchaser) of each of the following conditions (the "**Purchaser Closing Conditions**"):

9.1     The representations and warranties of Seller set forth in <u>Section 7</u> of this agreement shall be true and correct in all respects;

9.2     Sellers shall have performed all obligations required under this Agreement that are to be performed by Seller on or before the Closing Date;

9.3     Purchaser shall have received a certificate signed by Seller with respect to the item set forth in <u>Sections 9.1</u> and <u>9.2</u>;

9.4     The United States Bankruptcy Court for the Southern District of Texas shall have entered the Sale Order;

9.5     No applicable law shall prohibit the consummation of the transactions contemplated by this Agreement;

9.6     All actions by or in respect of or filing with any governmental authority required to permit the consummation of the Closing shall have been taken, made or obtained;

9.7     No proceeding instituted by any governmental authority shall be pending and no injunction, order, decree or judgment of any governmental authority of competent jurisdiction shall be in effect, in each case which seeks to or does, as applicable, prohibit, restrain or enjoin the consummation of the transactions contemplated by this Agreement; and

9.8     Seller shall have executed and delivered to Purchaser the following documents and instruments:

  a.     A bill of sale duly executed by the Trustee, on behalf of Seller, for the Houston and Caldwell Assets, to be prepared by Seller; and

  b.     Such other documents, instruments or certificates as shall be reasonably requested by Purchaser, including evidence of clear title for all titled assets.

10.     TERMINATION.  This Agreement may be terminated at any time before Closing as follows:

10.1     By written agreement of Seller and Purchaser;

10.2     By Purchaser, if any judicial, administrative or arbital action, suit or proceeding shall have been commenced, the purpose of which is, or might result in, preventing the consummation of the sale of the Houston and Caldwell Assets under this Agreement;

10.3     By Purchaser, if the Closing shall not have occurred by [_____], 2018;

10.4     By Purchaser if the Bankruptcy Court has not entered the Sale Order on or prior to [_____], 2018;

10.5     By Purchaser if, prior to the Closing, the Debtor's bankruptcy case shall have been dismissed; or

10.6     By Purchaser if Seller shall have breached any of its representations or warranties or covenants such that the condition set forth in Sections 9.1 or 9.2 shall not be satisfied, and Seller shall have not cured such breach within fifteen (15) days after receipt of notice from Purchaser with the result that the condition remains unsatisfied.

11.     ENTIRE AGREEMENT.  This Agreement constitutes the complete agreement between the parties and supersedes all prior or contemporaneous agreements or representations, written or oral concerning the subject matter of this Agreement.  This Agreement may not be modified or amended except in writing signed by a duly authorized representative of each party.  No other act, document, usage or custom shall be deemed to amend or modify this Agreement.

12.     NOTICES.  All notices required to be sent hereunder shall be in writing and shall be deemed to have been given upon (a) the date sent by email; (b) on the date it was delivered by courier; or (c) if by certified mail return receipt requested, on the date received, to the addresses set forth below and to the attention of the signatories of this Agreement and the cover sheet, or to such other address or individual as the parties may specify from time to time by written notice to the other party.  All notices shall be sent to the addresses set forth in this Agreement or any other address provided by a party to the other part in writing.

13.     NO WAIVER.  A party's failure to enforce its rights or remedies upon learning of any default or violation of any terms of this Agreement shall not be construed as a waiver of any of such party's rights or remedies, or of the default or violation.

14.     NO PRESUMPTION.  This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting it.

15.     SUCCESSORS AND ASSIGNS.  This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and permitted assigns, including any trustee appointed in any subsequent chapter 7 case of Debtor and Seller, if the Bankruptcy Case is dismissed.  Except as set forth in Sections 15.1 or 15.2 below, neither this Agreement nor any of the rights, interests or obligations hereunder may be transferred or assigned by any of the parties hereto without the prior written consent of the other party or parties hereto (which consent may be granted, withheld, conditioned or delayed in such other party's sole and absolute discretion), and any attempted assignment in contravention or breach of the foregoing shall be void and of no force or effect.  Notwithstanding the foregoing:

15.1    Without the consent of Seller or any other person, Purchaser may (i) assign this Agreement or any of Purchaser's rights, interests and/or obligations, in whole or in part (including the right or obligation to acquire any of the Houston and Caldwell Assets), under this Agreement to one or more persons who are affiliates of Purchaser and (ii) designate any person who is an affiliate of Purchaser to perform any of Purchaser's obligations, in whole or in part (including the obligation to acquire any of the Houston and Caldwell Assets), under this Agreement.

15.2    Without the consent of Seller or any other person, Purchaser may assign this Agreement or any of Purchaser's rights, interests and/or benefits, in whole or in part, under this Agreement as collateral to any lender of Purchaser.

16.     COUNTERPARTS.  This Agreement may be executed by electronic means and in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

17.     GOVERNING LAW.  The laws of the State of Texas, other than those pertaining to conflicts of laws, shall exclusively apply to all aspects of the parties' relationship and dealings.  Venue for any legal proceeding shall lie solely in the United States Bankruptcy Court for the Southern District of Texas, unless such court lacks jurisdiction, in which case venue shall lie solely in Harris County, Texas.  The terms of this provision shall survive beyond the termination of this Agreement.

DATED August ___, 2018.

SELLER                                              PURCHASER

                                                    K-W TEXAS LLC

_____          By: _____
Rodney D. Tow, Chapter 7 Trustee for Koontz     Name:
Wagner Custom Control Holdings, LLC             Title:

Address:                                            Address:

Trustee Rodney D. Tow                         [_____]
1122 Highborne Cay Court                      Email:  [_____]
Texas City, TX 77590-1403
Email:  rtow@rtowtrustee.com

**Exhibit A**

| | | | KOONTZ-WAGNER (IDAHO) |
|---|---|---|---|
| | | | 20394 Pinto Lane, Caldwell, ID 83607 |
| | | | Exhibit "A" Equipment List |
| | | | Plant/General Manger: Kyle Schriver - 574-334-0401 |
| | | | Wall to Wall, Floor to Ceiling per inspection conducted by Joel Bersh |
| **Location** | **No.** | **Qty** | **Description** |
| ID | 1 | 1 | Contents of Office Trailer |
| ID | 2 | 10 | Racks w/ Contents |
| ID | 3 | 1 | Skid Misc. Steel Parts |
| ID | 4 | 1 | Steel on Ground |
| ID | 5 | 1 | Skid of Pipe |
| ID | 6 | 3 | Sections Roller Conveyor |
| ID | 7 | 1 | Steel on Concrete |
| ID | 8 | 2 | Steel Horses |
| | **Bay Buildings / Fab Buildings** | | |
| ID | 9 | 1 | Clamps |
| ID | 10 | 1 | Steel Box |
| ID | 11 | 1 | Misc. Maintenance |
| ID | 12 | 1 | Kalamazoo HBS w/ Table |
| ID | 13 | 1 | Rack w/ Steel |
| ID | 14 | 1 | Misc. |
| ID | 15 | 1 | 90-12 Scotchman Ironwork w/ Tooling |
| ID | 16 | 1 | Misc. Steel Tables |

| ID | 17 | 1 | Clamps etc. |
|----|----|----|-------------|
| ID | 18 | 1 | Bewo Cut Off Saw w/ Tables |
| ID | 19 | 1 | Ridsid Threads |
| ID | 20 | 1 | Miller Welder |
| ID | 21 | 1 | Toyota LP Forklift (LEASED) |
| ID | 22 | 1 | Daeqo G25E CP Forklift - 5,000 lbs. |
| ID | 23 | 1 | Miller Detaweld 302 w/ Boom & Feeder |
| ID | 24 | 1 | Ellis Drill |
| ID | 25 | 1 | Dump Hopper |
| ID | 26 | 1 | Miller Detaweld 302 w/ Boom & Feeder |
| ID | 27 | 2 | Washington 20 ton TRDG Bridge Crane - Short Span 25 ft. - 30 ft. (Model F2853-1 & F2853-2) |
| ID | 28 | 1 | System For Crane Above |
| ID | 29 | 6 | Lincoln DV305 Welder w/ Feed & Boom |
| ID | 30 | 1 | Lincoln W350 Pro |
| ID | 31 | 2 | Toyota LP Forklift - 5,000 lbs (LEASED) |
| ID | 32 | 1 | Kawasaki Mule 610 |
| ID | 33 | 1 | Lincoln Ideal Arc 250 |
| ID | 34 | 1 | Base for Enclosure (Scrap) (WIP) |
| ID | 35 | 1 | Lincoln w/ Boom & Feed |
| ID | 36 | 1 | Cat TH83 Forklift - 10,000-15,000 lbs |
| ID | 37 | 1 | Kawasaki 600 Mule |
| ID | 38 | 1 | Misc. this Bay & Saw Room |
|    | **2nd Bay** | | |
| ID | 39 | 1 | 10 X 30 Hornet CNC Plasma w/ Water Table -2017 Model HHD120-ECKP |

| | | | (Cost about $175k) & Hypertherm Plasma PR300 |
|---|---|---|---|
| ID | 40 | 1 | FR-T30 Air Compressor |
| ID | 41 | 1 | Bentenbender Brake - 150 ton - 121OA Flush |
| ID | 42 | 1 | Extreme 360 Welder w/ Miller Feed |
| ID | 43 | 1 | Bentenbender Stear - Model 12Y4 |
| ID | 44 | 1 | Old Plate Roll |
| ID | 45 | 50 | Test Unit |
| ID | 46 | 1 | Miller XMT304 w/ Miller feed |
| ID | 47 | 1 | Miller 250 AC/DC |
| ID | 48 | 1 | Extreme 360 _____ Oncart w/ Boom & Feeder |
| ID | 49 | 1 | Miller Detaweld 302 w/ Boom & Feeder |
| ID | 50 | 1 | Heavy Duty Steel Work Table |
| ID | 51 | 1 | Miller Detaweld 302 w/ Boom & Feeder |
| ID | 52 | 1 | Partial Enclosure (WIP) |
| ID | 53 | 1 | Manlift |
| ID | 54 | 1 | Lincoln Ideal Arc DC100 w/ Boom & Feed on Cart |
| ID | 55 | 1 | Manlift |
| ID | 56 | 1 | Miller w/ Feed |
| ID | 57 | 1 | Genie GS-1930 Manlift |
| ID | 58 | 2 | (NO NAME) 10 Ton Crane (SPAN EXTENDED) |
| ID | 59 | 1 | Rail & Bus for Above (NO SYSTEM) |
| ID | 60 | 1 | Miller w/ Boom & Feed |
| ID | 61 | 1 | Extreme 360 Welder w/ Miller Feed |
| ID | 62 | 1 | CAT P30000 Diesel Forklift 27,000 lbs. -  Serial T38A-10029 |

| ID | 63 | 1 | Misc. this Bay |
|----|----|---|----------------|
| ID | 64 | 1 | Quincy QT-15 Air Compressor |
| ID | 65 | 1 | Pollarms Ranger 4 X 5 |
| ID | 66 | 1 | Misc. Outside Fab. Bay |
| ID | 67 | 1 | Sky Jack LP 4 X 4 - Serial SJ6832RT |
| ID | 68 | 1 | Misc. Outside Fab. Bay |
| ID | 69 | 1 | Bobcat 5175 w/ Sweeper |
| ID | 70 | 1 | Misc. |
| ID | 71 | 1 | 8 Drums Cat Coolant |
| ID | 72 | 1 | Cat 3400KW Load Bank ???? |
| ID | 73 | 1 | Cummins Stand by Generator PFGH-5735799 - Serial L05860422 |
| ID | 74 | 1 | Enclosed Trailer |
| ID | 75 | 1 | 2011 Dodge Ram 3500HD - Turbo Diesel |
| ID | 76 | 1 | Trailer |
| ID | 77 | 1 | 2000 Ford F-150 4 X 4 XL S.D. |
| ID | 78 | 1 | Dodge Ram 3500HD - Turbo Diesel (NO YEAR) |
| ID | 79 | 1 | Misc. Along Fence |
| ID | 80 | 1 | S.Building |
| ID | 81 | 1 | Outside Misc. |
| ID | 82 | 1 | 2005 Dodge Ram 1500 |
| ID | 83 | 1 | 30,000 lbs. Portable Dura-Ramp |
| ID | 84 | 1 | Misc. Outside |
| ID | 85 | 1 | Manlift |
|    |    |   | **Electrical / Parts / Fab Building** |

| ID | 86 | 1 | Electrical |
| ID | 87 | 1 | Toyota LP Forklift - 7,000 lbs (LEASED) |
| ID | 88 | 1 | Maintenance & Break Room |
| ID | 89 | 1 | Misc. Fab. |
| ID | 90 | 1 | Millermatic 252 |
| ID | 91 | 1 | 2.5 Ton Crane |
| ID | 92 | 1 | System For Crane Above |
| ID | 93 | 1 | Millermatic 252 |
| ID | 94 | 1 | Lincoln CV305 |
| ID | 95 | 1 | Drill & Saw |
| ID | 96 | 1 | Komatsu 30 LP Forklift |
| ID | 97 | 1 | Jet Finger Break |
| ID | 98 | 1 | Miller Matic |
| ID | 99 | 1 | Misc. |
| ID | 100 | 1 | 1982 LVD 20-OH-25 Stear - 20 ft. X 1/4 in. Capacity - Serial 9728 |
| ID | 101 | 1 | 1998 LVD 190BH-10 CAD-CNC Brake - Serial 25088 |
| ID | 102 | 1 | Dry Paint Building |
| ID | 103 | 1 | HAZ Storage Box |
| ID | 104 | 1 | Blast & Misc. |
| ID | 105 | 1 | Building #4 |
| ID | 106 | 1 | Enclosure In Building #4 (WIP) |
| ID | 107 | 1 | Misc. Outside |
| ID | 108 | 5 | Yard Trailers |
| ID | 109 | 1 | WIP on Trailer |

Page 13—PURCHASE AGREEMENT

| ID | 110 | 1 | WIP Base on Trailer |
|----|-----|---|---------------------|
| ID | 111 | 1 | WIP |
| ID | 112 | 1 | WIP |
| ID | 113 | 1 | Almost Finished WIP |
| ID | 114 | 1 | Portable Office w/ Contents |
| ID | 115 | 1 | Portable Office w/ Contents |
| ID | 116 | 1 | Misc. |
| ID | 117 | 1 | Break Room Box |
| ID | 118 | 2 | Bases 2 X 2.5 In. (WIP) |
| ID | 119 | 1 | Welding Room Box w/ Contents |
| ID | 120 | 2 | Almost Finished Boxes (WIP) |
| ID | 121 | 1 | Base (WIP) |
| ID | 122 | 1 | Brown Box for 7 (WIP) |
| ID | 123 | 1 | Misc. Outside |
| ID | 124 | 1 | Almost Finished Gray Box (WIP) |
| ID | 125 | 1 | Big Double White Box (WIP - Needs $20k to finish) |
| ID | 126 | 5 | Beige Boxes (WIP) |
| ID | 127 | 1 | Misc. In Yard |
| ID | 128 | 1 | Skytrak 8042 - 8,000 lb. Capacity |
| ID | *129* | *1* | *Grove RT 880E* |
| ID | 130 | 1 | White Box (WIP) |
| ID | 131 | 1 | Misc. In Yard |
| ID | 132 | 1 | Base (WIP) |
| ID | 133 | 1 | Grove RT745 Yard Crane |

| ID | 134 | 1 | Drott Stradle Lift - 67,200 lbs. |
|----|-----|---|----------------------------------|
| ID | 135 | 1 | Shop Office |
| ID | 136 | 1 | Parts Room |
| ID | 137 | 1 | Locked Parts Room |
|    | **Fab Bay** | | |
| ID | 138 | 1 | Misc. |
| ID | 139 | 1 | AMADA Notcher |
| ID | 140 | 1 | Misc. |
| ID | 141 | 1 | Cincinnati 1812 Shear 1/4 in. - Serial 36332 - Pit |
| ID | 142 | 1 | Niagra Press Brake - Serial HBM-175-12-15 - Pit |
|    | **Warehouse Area** | | |
| TX | 143 | 1 | FORKLIFT, YALE 5,000 LB. CAP. MDL. GLP050, LPG pwrd., 3-stage, side shifter |
| TX | 144 | Lot | SHELVES, w/fasteners |
| TX | 145 | Lot | OLD ELECTRICAL TEST PANELS & PORTABLE TEST UNITS in cases (older) |
| TX | 146 | 1 | NEWER TEST PANEL   (made in Mexico) |
| TX | 147 | Lot | Miscellaneous Contents |
| TX | 148 | 1 | DIGITAL PLATFORM SCALE, 4 x 4 |
| TX | 149 | Lot | OFFICE AREA  (in long building) |
| TX | 150 | 1 | ROLLING CART, w/rigging |
| TX | 151 | 1 | ROLLING CART, w/safety harnesses & pwr. tools |
| TX | 152 | Lot | SHELVES, w/elec. motors & misc. |
| TX | 153 | 1 | FLAMMABLE MATERIAL CABINET (red) |
| TX | 154 | 1 | AIR COMPRESSOR, HUSKY |

Page 15—PURCHASE AGREEMENT

| TX | 155 | 1 | GAS PWRD. PRESSURE WASHER & SAFETY LIGHT |
|----|-----|---|------------------------------------------|
| TX | 156 | 1 | PORTABLE COOLING UNIT, PORTA-COOL |
| TX | 157 | Lot | SHELVES, w/elec. switch gear, ballasts, misc. |
| TX | 158 | Lot | SAFETY ROOM - RADIOS |
| TX | 159 | Lot | PALLET RACK SECTIONS (3), 20' ht. x 10'W. x 42", w/rigging equipment, etc. |
| TX | 160 | 1 | BASKET w/small tester & INSULATION  (located upstairs) |
| | **Sheet Storage Area** | | |
| TX | 161 | Lot | STORAGE RACKS (2), H.D. I-beam construction, 45,000 lb. load cap., 48" x 144"    ($1,000 ea.) |
| TX | 162 | Lot | STAINLESS STEEL SHEETS, 12 ga., 4 x 12 sheets, plus galvanized on floor, 1/8 & 1/4 aluminum on top |
| TX | 163 | Lot | GALVANIZED SHEETS, 2' x 12', in thick stacks |
| TX | 164 | 1 | POWDER COAT PAINT |
| TX | 165 | 1 | DUMP HOPPER, skidded |
| TX | 166 | 1 | FILTER CART |
| TX | 167 | 1 | CNC TURRET PUNCH, AMADA MDL. VIPROS 368 KING II, new 1999, Fanuc 18-P CNC control, 12' x 10' sheet area, outboard hyd. unit & cooler, S/N 36840066 |
| TX | 168 | 1 | SURFACE GRINDER, WARNER & SWASEY NEWTON 6 X 18, S/N H7219 |
| TX | 169 | 1 | EXPANDABLE SKATE WHEEL CONVEYORS (2) |
| TX | 170 | 3 | H.D. MATERIAL RACKS (3)  (large, medium & small) |
| TX | 171 | 1 | DRILL PRESS & WELDING CURTAIN  (behind) |
| TX | 172 | Lot | SHEETMETAL  (misc.) |
| TX | 173 | 1 | PORTABLE COOLING UNIT, PORTA-COOL  (big) |
| TX | 174 | Lot | MATERIAL RACK, sgl. sided, adj. cantilever arm |

| TX | 175 | 1 | PRESSBRAKE, WYSONG 175 T. CAP. MDL. MTH175-144, 12' overall bed, 10' dist. btn. housings, 8" stroke, 9" adj., 17" max. die space, Autobend 7 backgauge, Merlin light curtain safety device, S/N MT2-244 |
|---|---|---|---|
| TX | 176 | 1 | CABINET, adj. trays, w/small parts |
| TX | 177 | 1 | PRESSBRAKE, ERMAK, (2) Mdl. SPEED-BEND T25'385 units in tandem, Ermak Mdl. ED903D bending simulation control, 25' overall cap., S/N 03150-TDH3MW-2 (Type 12x193, Mdl. 2011) & S/N 03150-TDH3MW-1, w/Feissler light curtain |
| TX | 178 | Lot | PICKUP, LADDERS, PORTA-COOLS, JOBOX & FANS |
| TX | 179 | 1 | MULE, KAWASAKI  (ugly) |
| TX | 180 | 1 | CANTILEVER RACK, sgl. sided, w/some metal & RACK next to it. |
| TX | 181 | 1 | FORKLIFT, TOYOTA 4,500 LB. CAP. MDL. IFGU25, LPG pwrd., 3-stage mast, 189" max. lift ht., side shift, S/N 66692 |
| TX | 182 | 1 | PLATE SHEAR, WYSONG 3/16" X 12'  (rough) |
| TX | 183 | 1 | PORTABLE COOLING UNIT, PORTA-COOL  (small) |
| TX | 184 | 1 | ANGLE NOTCHER, BOSCHERT 8 X 8 TYPE LB-12, S/N 2832 |
| TX | 185 | 1 | SLITTER/SHEAR MACHINE (SLEAR), FORSTNER TYPE MST1250-140-S-CR-HOV, new 2011, CNC/PLC control, cut-to-length line, 48" max. width, 16 GA. CAP., cut-off section Mdl. TSS1250INOX, uncoiler w/scissor roller feed cart, 54" max. coil dia., S/N 103327TSS |
| TX | 186 | Lot | BANDING CART, w/tools |
| TX | 187 | Lot | MISC. COILS - only (1) full, 18 ga. |
| TX | 188 | 1 | NORDSON POWER COAT PAINT BOOTH - (2) manual Nordson Encore LT guns, (2) stainless steel Nordson paint pots (wall comes down to get out); MILBANK SYSTEM INC. (MSI) 3-STAGE WASHER, 75'L., Automation Direct touchscreen control; DRIP CATCH BASIN; 40' DRY-OFF OVEN; then enter NORDSON SPRAY BOOTH; 90' GAS FIRED POST PAINT DRYER; 400' CHAIN CONVEYOR |
| TX | 189 | 2 | SAFETY CABINETS (2) |
| TX | 190 | Lot | FAN & LADDER |
| TX | 191 | 1 | SCISSOR LIFT, JLG MDL. 1930ES  (ugly) |

| TX | 192 | 1 | SCISSOR LIFT, GENIE MDL. 2632  (covered w/paint - bigger but uglier) |
|----|-----|---|---|
| | **Back Building** | | |
| TX | 193 | 1 | EVAPORATOR PSI WATER SYSTEM, EUCON MDL. N33Y-28, new 2002, S/N 36511  (part of paint line???) |
| TX | 194 | 1 | FORKLIFT, TOYOTA 14,000 LB. CAP. MDL. 7FGU70, LPG pwrd., 219" lift ht.  (attachment SSFP = 12,100 lb. cap., no forks)  (appears out of service) |
| TX | 195 | 1 | FORKLIFT, TOYOTA 16,100 LB. CAP. MDL. 7FGU80, LPG pwrd., 132" max. lift ht., 72" forks, side shift, S/N 70140 |
| TX | 196 | 1 | YARD FORKLIFT, TAYLOR 35,000 LB. CAP. MDL. TXH350LHD, diesel pwrd., 156" lift ht., closed carriage, 8' forks, fork positioner, Spicer Econ, S/N SCH37638, New in 2012 |
| TX | 197 | 1 | YARD FORKLIFT, TAYLOR 35,000 LB. CAP. MDL. TXH350LHD, diesel pwrd., 156" lift ht., closed carriage, 8' forks, fork positioner, Spicer Econ, S/N SCH37637  New in 2012 (twin sister) |
| TX | 198 | 1 | FORKLIFT, TOYOTA 5,000 LB. CAP. MDL. 8FGU25, LPG pwrd., quad. mast, 240" max. lift ht., side shift, S/N 14342 |
| TX | 199 | 1 | BUILDING, CUSTOM, unfinished 1/2 bldg. = 50'L. x 15'W, with 1/4 wall of switchgears  (located in yard) |
| TX | 200 | 1 | FORKLIFT, TOYOTA 16,100 LB. CAP. MDL. 7FGU80, LPG pwrd., 2-stage mast, 132.5" max. lift ht., 72" forks, side shift, S/N 70141 |
| TX | 201 | 1 | PAINT STORAGE BUILDING, 15 x 15, skidded |
| TX | 202 | 12 | SAWHORSES - (12) 12,000 lb. cap. & (17) misc. others |
| TX | 203 | 1 | PORTABLE AIR COMPRESSOR SYSTEM, DOOSAN MDL. P425HP375 (United Rentals) |
| TX | 204 | 2 | FUEL TANKS (2), w/pumps |
| TX | 205 | 1 | PORTABLE GENERATOR SET, DIAMOND, Perkins diesel engine, trailer, 5,526 H.O.M. |
| TX | 206 | 1 | PORTABLE ELECTRICAL SWITCH PANELS, JUNK SCISSOR LIFT, PORTA-COOL, MISC. SAWHORSES  (Located in yard in corner) |
| TX | 207 | 1 | C-FRAME PUNCH, PRATT & WHITNEY MDL. 791-009, hyd. unit, on |

| | | | pallet |
|---|---|---|---|
| TX | 208 | 1 | BETTER BILT 100 GAL. FUEL TANK & BASKET w/MIG guns |
| TX | 209 | Lot | CHANNEL, SQUARE TUBES, CATWALK, RECT. TUBES, ANGLE IRON, I-BEAMS  (located at back fence) |
| TX | 210 | 1 | SPREADER, 30,000 lb. x 12' |
| TX | 211 | 1 | CRANE COIL HOOK, CALDWELL 30,000 LB. CAP. |
| TX | 212 | 1 | FORKLIFT BOOM, 15,000 lb. cap. |
| TX | 213 | 2 | MATERIAL RACKS (2), w/misc. pallet rack parts  (big & rusty) |
| TX | 214 | 1 | BUILDING SHELL, 15' x 40', (6) unit section - full of electrical (Siemens?????) |
| TX | 217 | 3 | PIPE THREADERS, RIDGID MDL. 535 (3)  (2 like new) |
| TX | 218 | Lot | GREENLEE BENDER & PARTS RACKS |
| TX | 219 | 1 | IRONWORKER, GEKA HYDRACROP MDL. 55/A, new 1996, 4-1/2 x 4-1/2 x 3/8, S/N 9692 |
| TX | 220 | Lot | MISC. TOOLS, GREENLEE HYDRAULIC BENDER, MANUAL COPPER BENDING BRAKE |
| TX | 221 | Lot | BASKET OF WIRE & FITTINGS _____ |
| TX | 222 | 1 | BENDER, GREENLEE MDL. 854DX  (like new) |
| TX | 223 | 1 | RIGGING  (on wall) |
| TX | 224 | 1 | ROL-A-LIFT |
| TX | 225 | 1 | HOPPER  (big) |
| TX | 226 | 1 | WELDING MACHINE, MILLER MDL. CB302, S/N KJ_____ |
| TX | 227 | Lot | JOBOXES, LADDERS, DEWALT CHOP SAW & PLASMA UNIT  (by side wall) |
| TX | 228 | 1 | SCISSOR LIFT, GENIE  (small, ugly & paint covered) |
| TX | 229 | Lot | MISC. SHOP TOOLS, ROLLING TOOLBOXES, PORTA-COOL (small), MANUAL (foot) HYDRAULIC LIFT  (by opposite side wall) |

| TX | 230 | Lot | CHEMICAL STORAGE CABINET, SAF-T-CART, RIDGID TILTING ARBOR TABLE SAW |
|----|-----|-----|----|
| TX | 231 | Lot | SAWHORSES, JOBOX, BIG CABINETS |
| TX | 232 | 4 | SHELVES (4), full of small fasteners |
| TX | 233 | Lot | PARTS CAROUSEL ROLLING WORKBENCH w/vise & SPOOLS OF WIRE |
| TX | 234 | Lot | FAN & (2) ROLLING LADDERS |
| TX | **Next Building** | | |
| TX | 235 | 2 | (2) JOBOXES & 4 X 8 WELDING TABLE w/vise |
| TX | 236 | Lot | TOOLCRIB - POWER TOOLS |
| TX | 237 | 2 | SHELF UNITS (2), w/larger fasteners |
| TX | 238 | 1 | WELDING MACHINE, MILLER MDL. DIMENSION NT450, new 2011, Miller 22A wire feeder, S/N MB210412U |
| TX | 239 | 3 | (3) SAF-T-CARTS, (2) FLOOR DRILL PRESSES, AIR COMPRESSOR, MILLER FEEDER |
| TX | 240 | 1 | HORIZONTAL BANDSAW, HE&M SAW MDL. HURRICANE 2030A, bundle feed, (3) outside conveyors, PLC control, S/N 1148212  (nice) |
| TX | 241 | 1 | PORTABLE TABLE SAW, DEWALT |
| TX | 242 | Lot | C-CLAMPS |
| TX | 243 | 1 | WELDING MACHINE, MILLER MDL. CP302, 22A wire feeder, S/N MB400460V |
| TX | 244 | 1 | PORTABLE AIR COMPRESSOR SKID - SPEEDAIRE VERTICAL AIR COMPRESSOR, JOB GENERAC GENERATOR |
| TX | 245 | 1 | WELDING MACHINE, MILLER MDL. DIMENSION NT450, S/N MB2104134 |
| TX | 246 | 1 | WELDING MACHINE, MILLER MDL. DIMENSION NT450, S/N MB2104114 |
| TX | 247 | 1 | PORTABLE PLASMA CUTTER, HYPERTHERM MDL. POWERMAX 1650G3 |

| TX | 248 | 1 | WALK BEHIND FLOOR GRINDER, 3" (weird) |
|----|-----|---|---------------------------------------|
| TX | 249 | 1 | HEATER, TOOLBOX, BOTTLE RACK |
| TX | 250 | 1 | WELDING MACHINE, MILLER MDL. CP302, S/N KJ102821 |
| TX | 251 | 1 | PORTABLE SMOKE EATERS (2), AIRFLOW SYSTEMS |
| TX | 252 | 1 | AIR DRYER, HANKINSON (on a pallet?????) |
| TX | 253 | 1 | WELDER/GENERATOR, MILLER MDL. BOBCAT 250 (gasoline?????) |
| TX | 254 | 1 | MILLER MDL. SYNCROWAVE 180SD WELDER, S/N LC367853 (old) & (3) LIVE FEEDS (junk) |
| TX | 255 | 1 | WELDING MACHINE, MILLER MDL. CP302, new 2011, R11S wire feeder, S/N MB460468V |
| TX | 256 | 1 | WELDING MACHINE, MILLER MDL. CP302, S/N KK295899 |
| TX | 257 | Lot | SAW HORSES, BIG ROLLING LADDER, CABINETS w/spare tools, RIGGING |
| TX | **Outside Paint Building** | | |
| TX | 258 | 1 | FORKLIFT, TOYOTA 5,000 LB. CAP. MDL. 8FGCU25, LPG pwrd., 4,500 lbs. w/side shift, side shift, 189" max. lift, LPG pwrd. |
| TX | **Paint Building** | | |
| TX | 259 | Lot | BLAST ROOM: approx. I.D. 90'L. x 36W., w/25' door on one end, 14' clearance, 32' door on other, auger in floor on west side, returns grit to recovery unit (1 gross screw & 2 long screws), dust collector, separator, (2) Clemco blast pots under 1 sand tower, 24-section bag house; PAINT ROOM: I.D. 90' x 36', (2) paint pumps, huge steel work platform |
| TX | 260 | 1 | TRUCK RAMP, BLUFF MFG. 20,000 LB. CAP. MDL. 205YS8436L |
| TX | **Outside** | | |
| TX | 261 | Lot | PRESSBRAKE DIES (small) |
| TX | 262 | 1 | FAN (nice - very large) |
| TX | 263 | 1 | RECIPROCATING AIR COMPRESSOR, QUINCY MDL. QT-15, 2-stage, 15 HP motor, Great Lakes refrigerated air dryer |

| TX | 264 | 9 | COLLAPSIBLE WIRE BASKETS (9) |
|----|-----|---|------------------------------|
| TX | 265 | 1 | RIDING LAWNMOWER, JOHN DEERE ALLO AUTOMATIC |
| TX | 266 | 1 | CONDUIT & FITTINGS  (storage shed in middle of yard - building it sold) |
| TX | 267 | 1 | TRASH MASHER, CRAM-A-LOT MDL. CCR-02-WM, new 2000, S/N CP6718-01 |
| TX | 268 | 8 | TANKS (8), 8' x 5' x 2', steel painted  (in corner of yard - scrap????) |
| TX | 269 | 1 | YALE 5,000 LB. FORKLIFT LIFT, GENIE MANLIFT, & LOTS OF CONDUIT FITTINGS, SUPPLIES TO ASSEMBLE CONTROL CABINETS (in locked parts area - look thru fence) |
| TX | 270 | Lot | PALLET RACK & SHIPPING MATERIAL |
| TX | 271 | Lot | ADDITIONAL OFFICE FURNITURE THROUGHOUT |

**Exhibit B**

**Excluded Assets**

**[To come]**