UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>KOONTZ-WAGNER CUSTOM<br>CONTROL HOLDINGS LLC,<br><br>Debtor. | Case No. 18-33815<br><br>(Chapter 7) |

### TRUSTEE'S MOTION FOR ORDER (A) APPROVING COMPROMISE, (B) AUTHORIZING PAYMENT FROM PROCEEDS OF SALE OF LEASED EQUIPMENT, AND (C) GRANTING RELATED RELIEF

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Rodney D. Tow, in his capacity as chapter 7 trustee (the "Trustee") for the estate of Koontz-Wagner Custom Control Holdings, LLC. (the "Debtor"), files this motion (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form annexed hereto (the "Proposed Order"), (a) approving the compromises and settlements among the Trustee, K-W Texas LLC (the "Purchaser"), and HYG

1

Financial Services, Inc ("HYG" and together with the Trustee and the Purchaser, (the "Parties"), regarding HYG's interest attaching to the proceeds of the sale of certain equipment to which HYG had title, (b) authorizing payment pursuant to the settlement, and (c) granting related relief. In support of the Motion, the Trustee respectfully states the following:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief sought herein are Bankruptcy Code §§ 105(a) and 363 and Bankruptcy Rule 9019.

## BACKGROUND

**A. Case Background**

4. On July 11, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

5. The Office of the United States Trustee appointed Rodney D. Tow as the Trustee on July 11, 2018.

6. The Debtor filed its Schedule of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA") on July 30, 2018. [ECF Nos. 68, 70].

7. On August 8, 2018, the Clerk of the Court filed the *Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims* [ECF No. 91] (the "Notice of Assets").

8. The meeting of creditors pursuant to Bankruptcy Code § 341 was held and concluded on October 2, 2018.

### B. The Debtor's Business and Assets

9.  The Debtor was in the business of manufacturing and integrating control house enclosures for gas turbines, electric generators, oil and gas pipeline compressor stations, electric transmission and distribution systems, and other applications. Suppliers of various components delivered equipment to the Debtor, and the Debtor integrated these components into customizable control houses for delivery to the end-user.

10. The Debtor operated its business out of four principal locations: (1) South Bend, Indiana; (2) Caldwell, Idaho; (3) Houston, Texas; and (4) Chattanooga, Tennessee. On the Petition Date, the Debtor had equipment, raw materials, and partially completed projects at these locations, in addition to intangible property.

### C. Liquidation of the Debtor's Assets

11. The circumstances of this chapter 7 case required immediate action to liquidate the Debtor's assets in an efficient manner. The Debtor's contract counterparties with respect to completed or partially completed projects often faced significant damages in the event of delay in the completion and delivery of the control houses, which could potentially be asserted as claims against the Debtor's estate or setoff rights against amounts owed to the estate. Further, the Debtor's equipment, inventory, and certain intangible property needed to be sold as soon as possible to obtain the highest value from purchasers seeking to quickly occupy the Debtor's place in the market and to limit administrative expenses from rent to the landlords of the Debtor's facilities and security services engaged by the Trustee.

12. Among other transactions, the Trustee has liquidated the Debtor's estate primarily pursuant to four orders entered by the Court:

   (a) <u>Chattanooga Auction Order</u>. On July 20, 2018, the Court entered the *Order Granting Trustee's Emergency Motion for Order Authorizing (I) the Assumption of*

*the Asset Marketing Agreement with Hilco Industrial, LLC; (II) Authorizing the Sale of Property Pursuant to Auction; and (II) Paying Commission to Hilco as an Administrative Expense of the Estate* [ECF No. 28] (the "Chattanooga Auction Order"). The Chattanooga Auction Order authorized the Trustee to continue the auction of the assets at the Debtor's Chattanooga facility that was set in motion prepetition. The Trustee sold substantially all of the Debtor's equipment in Chattanooga pursuant to this order.

(b) WIP Procedures Order. On July 26, 2018, the Court entered the *Order on Trustee's Amended Emergency Motion for Order Authorizing the Trustee to (I) Sell Inventory and Work in Process Pursuant to Certain Procedures Under Bankruptcy Code §§ 363 and 105(a), and (II) Use the Proceeds of the Sales to Preserve the Estate* [ECF No. 59] (the "WIP Procedures Order"). The WIP Procedures Order established a procedure under which the Trustee could sell and/or release uncompleted control houses to the counterparty for whom the work was performed, without the need to obtain a separate order for the Court. The Trustee sold several uncompleted control houses pursuant to these procedures.

(c) South Bend Sale Order. On August 29, 2018, the Court entered the *Order (A) Authorizing Sale of Indiana Assets Free and Clear of all Liens Claims, Encumbrances, and other Interests, Other than Accounts Receivable; (B) Establishing Procedure for Opt-Out of Sale of Fabrication Work Related to WIP; (C) Finding Business Justification for Assumption and Assigning of Executory Contracts and Unexpired Leases Through Separate Order; (D) Waiving Application of Stay Pursuant to Bankruptcy Rules 6004 and 6006; and (E) Granting Related Relief* [ECF No. 150] (the "South Bend Sale Order"). Pursuant to the South Bend Sale Order, the Trustee sold free and clear substantially all of the estate assets at the Debtor's South Bend, Indiana locations that were not sold pursuant to the WIP Procedures Order or other order.

(d) Houston and Caldwell Sale Order. On September 11, 2018, the Court entered the *Order (A) Authorizing Sale of Houston and Caldwell Assets Free and Clear of All Liens, Claims Encumbrances, and other Interests, other than for Accounts Receivable and (B) Waiving Application of Stay Pursuant to Bankruptcy Rule 6004* [ECF No. 174] (the "Houston and Caldwell Sale Order"). Pursuant to the Houston and Caldwell Sale Order, the Trustee sold free and clear substantially all of the assets at the Debtor's Houston, Texas and Caldwell, Idaho locations that were not sold pursuant to the WIP Procedures Order or other order.

**D. Sale of Property Owned by HYG Pursuant to Houston and Caldwell Sale Order**

13. Two Genie scissor lifts and two Yale forklifts owned by HYG and leased to the Debtor (the "HYG Property") were inadvertently included in the sale to the Purchaser pursuant to the Houston and Caldwell Sale Order. The Purchaser, in turn, had already sold one of the scissor

4

lifts and both of the forklifts through an auction conducted at the Debtor's Houston facility when the Trustee and his professionals became aware of the mistake.

14. The property that had already been sold by the Purchaser at auction consisted of the following (the "Sold HYG Property"):

| *Make* | *Model* | *Description* | *Serial No.* |
|---|---|---|---|
| Genie | GS1930 | Scissor lift | GS3016A151209 |
| Yale | GP050VX | Forklift | D875V04681N |
| Yale | GP050VX | Forklift | D875V04683N |

15. The property that remained in possession of the Purchaserconsisted of the following (the "Returned HYG Property"):

| *Make* | *Model* | *Description* | *Serial No.* |
|---|---|---|---|
| Genie | GS1930 | Scissor lift | GS3016A151210 |

**E. Proposed Settlements and Compromises with Respect to HYG Property**

*i.) Settlement Between the Trustee and the Purchaser*

16. The Trustee and the Purchaser have agreed to the following settlement and compromise of the potential dispute between the Trustee and the Purchaser regarding the HYG Property (the "Purchaser Settlement"):[1]

> (a) The Purchaser will remove the Returned HYG Property from the pending auction and make the Returned HYG Property available for pickup by HYG.
>
> (b) The Purchaser agrees that the Purchaser will have no title to or right to possession of the Returned HYG Property arising from the Trustee's sale of the Returned HYG Property upon HYG taking possession of the Returned HYG Property.

---
[1] The Purchaser has already returned the Returned HYG Property to HYG pursuant to the Purchaser Settlement.

5

   (c) The Debtor's estate will be responsible for any remaining obligations arising from the Sold HYG Property and will not seek additional recovery against or contribution from the Purchaser related thereto.

 17. The Trustee believes that the Purchaser Settlement is in the best interest of the Debtor's estate. An action against the Purchaser would involve difficult legal and factual issues surrounding the Trustee's entitlement to recovery and the amount of the recovery. To the extent that the Trustee prevailed in an action against the Purchaser, recovery would likely be limited to the profit earned by the Purchaser as the result of the Trustee and Purchaser's mutual mistake. The Purchaser Settlement results in more expected value for the Debtor's estate than litigation considering the expected recovery and expected expense.

 *ii.) <u>Settlement Between the Trustee and HYG</u>*

 18. The Trustee and HYG have agreed to the following settlement and compromise of the potential dispute between the Trustee and HYG regarding the HYG Property (the "<u>HYG Settlement</u>"):

   (a) The Estate will pay HYG $20,500.00 (the "<u>Agreed Payment</u>") from the proceeds of the sale pursuant to the Houston and Caldwell Sale Motion.

   (b) Upon receiving the Agreed Payment, HYG will release and waive any (i) administrative expense claim against the Debtor's estate arising from the sale of the HYG Property to the Purchaser, (ii) claim against the Purchaser relating to the Trustee's sale of the HYG Property to the Purchaser, and (iii) cause of action to establish title or possession with respect to the Sold HYG Property from the third-party purchasers.

 19. The Trustee believes that the HYG Settlement is in the best interest of the Debtor's estate. HYG has provided the Trustee and his professionals with documentation indicating that the Debtor leased the HYG Property from HYG. The $20,500.00 payment reflects the fair market value of the Sold HYG Property—$5,500 for the 2015 Genie scissor lift and $15,000 for the two Yale forklifts. The Trustee's professionals have reviewed sale listings for similar equipment and advised the Trustee that this amount accurately reflects the value of the Sold HYG Property. The

Trustee has therefore determined that the HYG Settlement results in more expected value for the Debtor's estate than litigating the issue.

## RELIEF REQUESTED

20. By this Motion, pursuant to Bankruptcy Code §§ 105(a) and 363 and Bankruptcy Rule 9019, the Trustee seeks entry of an order, substantially in the form of the Proposed Order, (a) approving the Purchaser Settlement and the HYG Settlement, (b) authorizing the Trustee to pay $20,500.00 to HYG pursuant to the HYG Settlement, and (c) granting related relief.

## BASIS FOR RELIEF

### A. Legal Standard

21. Bankruptcy Code § 363(b)(1) authorizes trustees to use, sell, or lease property of a debtor's estate other than in the ordinary course of business with court approval. To receive approval, "there must be some articulated business justification for using, selling, or leasing the property outside of the ordinary course of business." *ASARCO, Inc. v. Elliot Management (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011). Further, Bankruptcy Code § 105(a) authorizes bankruptcy courts to "issue any order, process, or judgement that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Bankruptcy Rule 9019 expressly gives the Court the discretion to approve compromises of controversies and claims. *See, e.g.*, *Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *Continental Airlines, Inc. v. Air Line Pilots' Ass'n Int'l, (In re Continental Airlines, Inc.)*, 907 F.2d 1500, 1508 (5th Cir. 1990); *In re Aweco, Inc.*, 725 F.2d 293 (5th Cir. 1984).

22. Congress provided mechanisms in the Bankruptcy Code to encourage settlements. "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a

distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005). "Compromises are favored in bankruptcy" because they minimize litigation costs and further the parties' interest in expediting the administration of a bankruptcy case. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. Rev. 1993)).

23. Bankruptcy Rule 9019 governs the procedural requirements to be followed before a settlement may be approved. Bankruptcy Rule 9019(a) provides in relevant part that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." FED. R. BANKR. P. 9019(a). Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

24. Court should approve a proposed settlement or compromise under Bankruptcy Rule 9019 if the settlement is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy estate. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation." *In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (citations omitted); *see also Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414 (1968); *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599 (5th Cir. 1980). Moreover, a bankruptcy court need not be convinced that the proposed settlement is the best possible, but "need only conclude that the settlement falls within the

reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008).

25. The Fifth Circuit has directed that, in determining whether to approve a proposed settlement, a bankruptcy court should evaluate the following factors: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. *In re Age Refining, Inc.*, 801 F.3d 530 (5th Cir. 2015); *In re Jackson Brewing Co.*, 624 F.2d at 602.

26. Under the third, catch-all provision, the Fifth Circuit has specified two additional considerations. First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1996). Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

**A. The Purchaser Settlement and HYG Settlement Should Be Approved**

27. The Trustee believes that the Purchaser Settlement and the HYG Settlement each satisfy the requirements defined by the Fifth Circuit.

*i.) The Purchaser Settlement*

28. Through the Purchaser Settlement, the Trustee obtained the return of the Returned HYG Property without the need for any litigation. Absent a compromise, the Trustee would have to bring an action against the Purchaser seeking to obtain the return of the Returned HYG Property and the profits earned from the sale of the Sold HYG Property. There may be a basis for such relief; however, litigation would involve difficult factual questions of the net profits from the Sold HYG Property as well as the amount the Purchaser paid for the Returned HYG Property. The Purchaser Settlement avoids the substantial expense and uncertainty of litigation and provides the

9

estate a benefit that is approximately what the Trustee could achieve through successful litigation. The Trustee has therefore determined that the Purchaser Settlement is in the best interests of the creditors of the Debtor's estate.

*ii.) The HYG Settlement*

29. HYG has provided the Trustee's professionals information demonstrating that HYG held title to the HYG Property. According to the Houston and Caldwell Sale Order, this interest attached to the proceeds of the sale.

30. The HYG Settlement determines the value of HYG's interest. After arms'-length negotiations, the Trustee and HYG have agreed on $20,500.00 as the value of the Sold HYG Property.[2] Sale listings for similar equipment support this agreed value. Litigation with respect to the value is unlikely to result in a better outcome for the Debtor's estate. The Trustee has therefore determined that the HYG Settlement is in the best interests of the creditors of the Debtor's estate.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, (a) approving the Purchaser Settlement and the HYG Settlement, (b) authorizing the Trustee to pay $20,500.00 to HYG pursuant to the HYG Settlement, and (c) granting related relief.

[*Remainder of Page Intentionally Left Blank*]

---

[2] HYG has already taken possession of the Returned HYG Property.

Dated:  December 17, 2018

Respectfully submitted,

**KASOWITZ BENSON TORRES LLP**

*/s/R. J. Shannon*
Kyung S. Lee (TBA No. 12128400)
klee@kasowitz.com
R. J. Shannon (TBA No. 24108062)
rshannon@kasowitz.com
1415 Louisiana St., Suite 2100
Houston, TX 77002
Telephone: (713) 220-8800
Facsimile:  (713) 222-0843

*Special Counsel for Rodney D. Tow, Chapter 7 Trustee for Koontz-Wagner Custom Control Holdings LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2018, a true and correct copy of this Motion was served of (i) all parties registered to receive ECF notification in the above captioned case and (ii) by first class U.S.P.S. mail on all parties on the Second Revised Limited Mailing List [ECF No. 198].

*/s/R. J. Shannon*
R. J. Shannon