UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:** ) <br> ) <br> **KOONTZ-WAGNER CUSTOM** ) <br> **CONTROLS HOLDINGS LLC,** ) <br> ) <br> Debtor. ) <br> ) | Case No. 18-33815 <br><br> (Chapter 7) |

## DECLARATION OF RODNEY TOW

I, Rodney D. Tow, declare as follows:

1. I am the chapter 7 trustee in the chapter 7 case of Koontz-Wagner Custom Controls Holdings, LLC, Case No. 18-33815. I am over the age of 18 and competent to testify.

2. I am submitting this Declaration in support of (a) the Trustee's Motion to Authorize Interim Distribution [ECF No. 520] (the "Interim Distribution Motion"), (b) the Trustee's Motion to Compromise Claim No. 101 Filed by Williams Industrial Services Group, Inc. and Claim No. 102 Filed by Williams Industrial Services Group, LLC [ECF No. 521] (the "Williams 9019"); and (c) the Trustee's Motion to Compromise Claim No. 58 of the IBEW Local 1392 Health & Welfare Fund and Claims No. 35 and 59 of the I.B.E.W. Local No. 1392 Pension Fund [ECF No. 522] (the "IBEW 9019").

3. Except as otherwise noted, I have personal knowledge of the matters stated in this Declaration. If I were called to testify as a witness on these matters, I would testify competently to the facts set forth herein.

### Interim Distribution

4. Since June 2020, I have been working to resolve the major remaining claims in this chapter 7 case and make a distribution to creditors. I have analyzed the proofs of claim filed by

creditors in this case and believe that an interim distribution as set out in the Interim Distribution Motion is in the best interests of creditors of the Debtor's estate.

5. To determine the appropriate amount of an interim distribution, while accounting for estimated administrative expenses, I analyzed the claims filed in this case and the orders dealing with claims entered by the Court and prepared a spreadsheet calculating the waterfall distribution under Bankruptcy Code 726(b). For claims that required further investigation, I contacted the creditors directly, or, where one of my attorneys had been involved with a particular creditor, directed counsel to follow up. after accounting for estimated administrative expenses. As claims were settled or otherwise resolved, I updated this spreadsheet.

6. Trustee's **Exhibit 2** reflects my analysis as of June 3, 2021, when the Motion for Interim Distribution was filed. As reflected in Trustee's Exhibit 2, and the Interim Distribution Motion, the bankruptcy estate held $4,306,100.91, which would provide approximately a 12.04% distribution on general unsecured claims after:

    a. Paying in full undisputed administrative expenses that were then payable; undisputed secured claims; and undisputed priority unsecured claims;

    b. Reserving 100% of for disputed priority claims and estimated administrative expenses that are not yet payable (such as compensation for the Trustee and his professionals); and

    c. Reserving amounts necessary to make *pro rata* distributions on all unresolved general unsecured claims.

7. To ensure that adequate funds remained in the estate for unanticipated administrative expenses and disputes regarding claims, the Motion for Interim Distribution requests authority to distribute only 90% of the expected final distribution to undisputed general unsecured claims. $183,852.24 of the expected total dividend to general unsecured creditors will be reserved for a final distribution.

2

8.  Based on my business judgment and more than 30 years of experience as a chapter 7 trustee, I believe that this reserve will be sufficient to ensure that all unresolved claims and any claim holders disputing that their claim should be subordinated under Bankruptcy Code § 726 will receive a *pro rata* distribution with other claims of the same priority if their claims are ultimately allowed as filed.

9.  Moreover, after filing the Interim Distribution Motion, I reached a resolution regarding Claim No. 13 of the Internal Revenue Service. As originally filed, Claim No. 13 asserted a priority unsecured claim of $293,686.82, the full amount of which was reserved on account of the IRS under the Interim Distribution Motion. In response to claim objection, the IRS amended its claim, asserting only $1,282.04 as a priority claim. Trustee's **Exhibit 3** is a true and correct copy of the amended Claim No. 13. The amounts reserved for unresolved general unsecured claims and unexpected costs of administering the estate (i.e., not reserved for estimated administrative expenses or unresolved claims) have therefore increased by $292,404.78 to $476,257.02.

10. An interim distribution is in the best interests of creditors of the Debtor's bankruptcy estate. The bankruptcy estate will continue to have adequate funds to continue liquidating the remining assets and addressing the unresolved claims.

### Settlements with Williams Entities and the Union Funds

11. Critical to the contemplated interim distribution are the settlements pending approval in (a) the *Trustee's Motion to Compromise Claim No. 101 Filed by Williams Industrial Services Group, Inc. and Claim No. 102 Filed by Williams Industrial Services Group, LLC* [ECF No. 521] and (b) the Trustee's Motion to Compromise Claim No. 58 of the IBEW Local 1392 Health & Welfare Fund and Claims No. 35 and 59 of the I.B.E.W. Local No. 1392 Pension Fund

[ECF No. 522]. I believe that both are fair and equitable and in the best interests of creditors of the Debtor's bankruptcy estate.

12. Trustee's **Exhibit 4** is a true and correct copy of the settlement agreement with the Williams entities regarding Claim No. 101 and 102 (the "Williams Settlement"). Under the Williams Settlement, Claim No. 101 is being reduced from $24,802,802.00 to $7,704,132.83. Claim No. 102 is being reduced from $952,519.25 to $295,867.17.

13. The Williams Settlement was the result of substantial negotiation since at least December 2020. And I believe that it is a better deal for creditors than incurring substantial professional fees in a gamble to reduce the claims further. The Williams entities have paid certain obligations of the Debtor and therefore have claims allowable in some amount. Moreover, the cooperative approach has already the information needed to (a) completely resolve the asserted $2,322,011.40 unsecured claim of the Eaton Corporation, (b) reach a resolution of the I.B.E.W. Local No. 1392 Pension Fund's asserted $2,935,544.00 unsecured claim, and (c) lodge objections to the $273,325.39 priority claim asserted by the Indiana Department of Revenue and the $186,665.89 general unsecured claim asserted by GP South.

14. The Trustee's **Exhibit 5** is a true and correct copy of the settlement agreement with the IBEW Local No. 1392 Pension Funds (the "IBEW Settlement"). Under the IBEW Settlement, the Pension Fund will receive a single distribution of $150,000 on account of Claim No. 35 in connection with the interim distribution, Claim No. 58 will be allowed as a priority claim in the amount of $46,879.39 (as filed), and Claim No. 59 will be allowed as priority claim in the amount of $16,755.39 (as filed).

15. The IBEW Settlement was also the result of significant negotiation. The $150,000 settlement payment on account of Claim No. 35 is effectively the same as a $1.3 million allowed

4

at a 12% distribution but avoids any risk that it will alter the Pension Plan's rights with respect to Williams. To the extent that the currently disputed claims are resolved for less than the amount they were filed, the deal will be even better for the estate. In my evaluation, the potential disputes regarding Claims No. 58 and 59 could not be profitably litigated given the amounts at issue unless Claim No. 35 already necessitated litigation. I therefore believe that the IBEW Settlement is fair and equitable and in the best interests of creditors of the Debtor's bankruptcy estates.

### Response by MC Supply & Service, Inc to the Interim Distribution Motion

16. I have reviewed Claim No. 122 filed by MC Supply & Service, Inc. ("MC Supply"). Trustee's **Exhibit 6** is a true and correct copy of Claim No. 122.

17. Claim No. 122 does not indicate that it is secured or entitled to priority—it is a general unsecured claim. Under the Interim Distribution Motion, MC Supply will receive a distribution on account of Claim No. 122 *pro rata* with other general unsecured creditors who timely filed proofs of claim in the Debtor's bankruptcy case.

18. The amount of the distribution on account of Claim No. 122 is appropriate. The assets of the Debtor's bankruptcy estate are not sufficient to pay all general unsecured in full. Paying MC Supply's claim in full would diminish the distributions to other general unsecured creditors who timely filed proofs of claim.

19. On June 21, 2021, MC Supply filed Claim No. 136 asserting a claim in the amount of $11,253.40—the same amount as Claim No. 122 but attaching documentation supporting the asserted claim. To the extent that Claim No. 136 is, in effect, an amendment of Claim No. 122, the amendment does not change my analysis. Based on advice of counsel, it is my understanding that neither Claim No. 136 nor the documentation attached thereto indicates that MC Supply is entitled to priority treatment. To the extent that Claim No. 136 is a separate claim, it is my understanding,

5

based on the advice of counsel, that Claim No. 136 should be subordinated pursuant to Bankruptcy Code § 726(a)(3) for being tardily filed.

### Informal Response by Hain Capital Holdings, LLC to the Interim Distribution Motion

20. I have reviewed Claim No. 135 filed by United Coatings Technologies, Inc. Trustee's **Exhibit 7** is a true and correct copy of Claim No. 135. Based on the file-stamp on Claim No. 135, I believe that Claim No. 135 was filed on December 4, 2020, by United Coatings Technologies, Inc.

21. Based on the Notice of Transfer of Claim No. 135 to Hain Capital [ECF No. 455], of which Trustee's **Exhibit 8** is a true and correct copy, I believe that Claim No. 135 has been transferred to Hain Capital.

22. Based on the Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims [ECF No. 91], of which Trustee's **Exhibit 9** is a true and correct copy, I believe that the deadline to file proofs of claim in this chapter 7 case was November 13, 2018.

23. Based on the Certificate of Notice regarding the Notice of Assets [ECF No. 96], of which Trustee's **Exhibit 10** is a true and correct copy, the Trustee believes that the Notice of Assets was served on United Coatings Technologies on or about August 10, 2018, by U.S.P.S. mail at 1011 S. Main St., South Bend, IN 46601-3335.

24. Based on the printout of the information on the Indiana Secretary of State's web portal reflected in Trustee's **Exhibit 11**, and the printout of United Coatings Technologies' website reflected in Trustee's **Exhibit 12**, I believe that the address on which the Notice of Assets was served was a valid address for United Coatings Technologies.

25. Although, as chapter 7 trustee, I initiated an adversary proceeding against United Coatings Technologies, Inc.—Adversary Proceeding No. 20-03255—seeking to avoid certain

transfers from the Debtor to United Coatings Technologies, Inc., the matter was ultimately resolved by an agreement under which United Coatings Technologies agreed to pay the bankruptcy estate $15,000. Trustee's **Exhibit 13** is a true and correct copy of the Motion to Approve the Compromise [ECF No. 382] and Trustee's **Exhibit 14** is a true and correct copy of the related Order Granting Trustee's Motion to Compromise Controversy [ECF No. 397] (the "United Coatings Settlement Order").

26. Upon entry of the United Coatings Settlement Order, the adversary proceeding was closed and no prepetition transfers from the Debtor to United Coatings Technologies were ever avoided or recovered. Nor does the United Coatings Settlement Order provide for a section 502(h) or other claim against the estate. The Debtor's estate did not receive any judgment for the recovery of money or property resulting from the denial or avoidance of United Coatings Technologies' interest in property.

27. Moreover, even if Claim No. 135 is ultimately allowed, the Interim Distribution Motion provides for adequate reserves to allow for a *pro rata* final distribution on account of Claim No. 135 even if allowed in the amount claimed without subordination. Delaying distribution to holders of undisputed claims would prejudice other claimants and provide no benefit to Hain Capital.

28. On June 23, 2021, Hain Capital amended Claim No. 135 to be for a claim under section 502(h) in the amount of $15,000.00. I will analyze whether an objection is warranted to this claim in light of the expected distribution, legal uncertainty, ability of any other preference claimants to file a timely section 502(h) claim, and the costs the estate would incur in connection with such objection prior to a final distribution in this case.

## Interim Distributions to the IRS and Siemens Entities

29. The Interim Distribution Motion requested authority to make interim distributions on account of any Unresolved Claims up to certain limits in the event of resolutions with such claimants. Parties in interest were put on notice that any or all of the Unresolved Claims could be resolved prior to the hearing on the Interim Distribution Motion and that a distribution up to the full amount of the reserved amount of such claims could be authorized at the hearing.

30. In light of the amended Claim No. 13 by the IRS, I believe a distribution of $1,282.04 on account of that claim is appropriate. That amount represents the undisputed priority amount asserted in Claim No. 13.

31. My counsel informed me that on June 22, 2021, counsel for Siemens Energy, Inc., Siemens Industry, Inc., and Siemens Canada Limited contacted him to discuss an interim distribution on account of a potential interim distributions on undisputed portions of Claim Nos. 115, 116, 117, 118, 119, 120, and 121. As of the date of this Declaration, negotiations are ongoing with respect to the undisputed amounts of such claims, but I believe that some agreed-upon interim distribution is likely. Upon reaching an agreement with the Siemens entities with respect to the undisputed claims and/or portions of such claims, I will direct counsel to file an amended proposed order reflecting a distribution on account of these claims and a redline indicating the changes from the original proposed order.

32. In the event that the parties are not able to reach agreed undisputed amounts of Claim Nos. 115, 116, 117, 118, 119, 120, and/or 121, I believe that the amounts reserved will ensure that the Siemens entities will receive a *pro rata* final distribution in this case. Under the relief requested in the Interim Distribution Motion, the estate will hold $662,015.91 in reserve specifically on account of the Siemens claims (reflecting the expected distribution on $5.5 million

of total allowed claims), in addition to the $476,257.02 held in case any other reserve is insufficient.

33. It is my understanding, based on conversations with my counsel and emails forwarded by my counsel, that the estate's professionals requested updated claim information from the Siemens entities on March 1, 2021, with periodic follow-up communications but that the Siemens entities first provided a response that allowed for the resolution of certain claims on June 22, 2021. Although the Siemens entities likely have a good reason for the delay, I believe that prejudicing other creditors on account of that delay by denying an interim distribution would only harm other creditors and provide no benefit to the estate or even to Siemens. To the extent that one or more of the Siemens claims are consensually resolved after an interim distribution, I anticipate seeking authority to make a *pro rata* distribution to the Siemens entities in any motion to approve the compromise of the claim or claims unless all other matters had been resolved and a final distribution is then imminent.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June \_\_\_\_\_, 2021
Texas City, Texas

By: _____
Rodney D. Tow, Chapter 7 Trustee