**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | ) |
| | ) |
| | ) Case No. 18-33815 |
| **KOONTZ-WAGNER CUSTOM** | ) |
| **CONTROLS HOLDINGS LLC,** | ) Chapter 7 |
| | ) |
| **Debtor.** | ) |
| | ) |

**FIRST INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF PARKINS LEE & RUBIO LLP
AS SPECIAL BANKRUPTCY CO-COUNSEL FOR THE TRUSTEE, FOR THE PERIOD
FROM SEPTEMBER 23, 2020, THROUGH JUNE 30, 2021**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

**SUMMARY OF FEE APPLICATION**

| **Name of Applicant:** | Parkins Lee & Rubio LLP | |
|---|---|---|
| **Applicant's Role in Case:** | Special Bankruptcy Co-Counsel to Rodney D. Tow, chapter 7 trustee | |
| **Date Order of Appointment Signed:** | 11/16/2020 (ECF No. 413) | |
| | **Beginning of Period** | **End of Period** |
| **Time period covered by this Application:** | September 23, 2020 | June 30, 2021 |
| **Time period(s) covered by prior Applications:** | N/A | N/A |

| | |
|---|---:|
| **Total amounts awarded in all prior Applications:** | $0.00 |
| **Total fees requested in this Application and in all prior Applications:** | $167,732.50 |
| **Total fees requested in this Application:** | $167,732.50 |
| **Total professional fees requested in this Application:** | $154,557.50 |
| **Total actual professional hours covered by this Application:** | 410.5 |
| **Average hourly rate for professionals:** | $376.51 |
| **Total paraprofessional fees requested in this Application:** | $13,175.00 |
| **Total actual paraprofessional hours covered by this Application:** | 52.7 |
| **Average hourly rate for paraprofessionals:** | $250.00 |
| **Reimbursable expenses sought in this application:** | $4,050.40 |
| **Application cost:** | $7,945.00 (reflected in time records) |
| **Total of other payments paid to secured claimants** | $3,169,412.12 (includes return of Holdback) |
| **Total of other payments paid to administrative claimants** | $2,083,435.47 |
| **Estimated total for distribution to priority unsecured creditors:** | $92,331.08 |
| **Estimate percentage dividend to priority unsecured creditors** | 100% |
| **Estimated total for distribution to general unsecured creditors:** | $3,259,217.25 |
| **Estimate percentage dividend to general unsecured creditors** | 14.56% |
| **Receipts to date:*** | $9,558,948.50 |
| **Disbursements to date:*** | $5,252,847.59 |
| **Current balance in the Trustee's accounts:*** | $4,306,100.91 |

*These amounts are before the interim distribution authorized on June 28, 2021, and include receipts and disbursements of Holdback.

## INDEX OF EXHIBITS

**Exhibit A**      Parkins Lee & Rubio Timekeepers and Billing Rates

**Exhibit B**      Records of Time Expended and Expenses Incurred

**Exhibit C**      Detailed Narrative of Services Provided and Results Achieved

Parkins Lee & Rubio LLP ("PLR" or the "Firm")), special bankruptcy counsel to Rodney D. Tow, chapter 7 trustee (the "Trustee") of the estate of Koontz-Wagner Custom Control Holdings LLC (the "Debtor"), hereby submits this first interim application for allowance of compensation and reimbursement of expenses (the "Application"), pursuant to §§ 330 and 331 of title 11 of the United States Code, (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2016-1, seeking the entry of an order granting interim allowance of compensation and reimbursement in the amount of $171,782.90, comprising $167,732.50 for services rendered in connection with the Debtor's chapter 7 case and out-of-pocket expenses in the amount of $4,050.40 incurred in connection therewith during the period from September 23, 2020 through and including June 30, 2021 (the "Application Period"). In support of the Application, PLR respectfully represents as follows:

## JURISDICTION

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief sought in this Application are Bankruptcy Code §§ 327(a) and 330 of the Bankruptcy Code; Bankruptcy Rules 2014, 2016, and 6003; and Bankruptcy Local Rule 2016-1

## FACTUAL BACKGROUND

A. **Background and Status of the Case**

4.  On July 11, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. That same day, the office of the United States Trustee appointed Rodney D. Tow as the Trustee on July 11, 2018, and he remains the Trustee of this chapter 7 case.

3

5. Since the Petition Date, the Trustee has liquidated all of the Debtor's physical assets, pursued various causes of action, and worked to resolve claims. The Trustee currently holds $4,306,100.91 as property of the estate.

6. On June 28, 2021, the Court entered the *Order Granting Trustee's Motion to Authorize Interim Distribution* [ECF No. 545], authorizing the trustee to distribute $2,659,349.24 on account of claims in this case. This amount will pay all remaining secured and priority claims in full and pay a dividend of approximately $13.1% on account of undisputed general unsecured claims that are not subject to subordination under Bankruptcy Code § 726(a). Adequate funds are reserved to ensure a *pro rata* distribution to disputed or unresolved claims and to provide for the continued administration of the Debtor's bankruptcy estate. The estimated final distribution on account of unsubordinated general unsecured claims is approximately 14.56%

7. The Trustee continues work toward the resolution of the following claims in this case:

| *Claim* | *Claimant* | *Priority* | *Amount Claimed* |
|---|---|---|---|
| 104 | Crawford Electric Supply Co., Inc. | General Unsecured | $585,553.34 |
| 115 | Siemens Energy, Inc. | General Unsecured | $4,187,961.07 |
| 118 | Siemens Industry, Inc. | General Unsecured | |

8. Additionally, the continues to pursue the avoidance of prepetition transfers totaling $565,894.00 and recovery thereof in *Tow v. Crawford Electric Supply Co., Inc.*, Adv. Pro. No. 20-03244. A pretrial conference is set for August 31, 2021. Cooper & Scully, P.C. ("Cooper & Scully") represents the Trustee in that matter.

9. The Trustee expects to have sufficient cash on hand to pay ongoing administrative costs, including allowed professional fees of PLR and other professionals, and make a further distribution to unsecured creditors in this case.

B.  **The Trustee's Employment of Parkins Lee & Rubio LLPs**

10.     The Trustee originally selected Cooper & Scully to serve as his general bankruptcy counsel in this case and Diamond McCarthy LLP ("Diamond McCarthy") to serve as special counsel with respect to the sale of the Debtor's assets and other limited topics. The lawyers who provided services to the Trustee at Diamond McCarthy continue to represent the Trustee at PLR.

11.     On November 13, 2018, the Court entered a single order [ECF No. 216] (the "Attorney Retention Order") approving the employment of Cooper & Scully and the firms at which PLR professionals previously practiced.  An order approving the retention of PLR [ECF No. 413] (the "PLR Retention Order") was entered on November 16, 2020.

12.     Under the PLR Retention Order, the Firm was authorized to provide any and all legal services for the Trustee necessary or appropriate in connection with this chapter 7 case, except involving any matters directly involving Kirby Risk Corporation, Kirby Risk Electrical Supply, or an affiliate thereof. The primary scope of the services contemplated was to be resolving amounts in holdback pursuant to the WIP Procedures Order, resolving proofs of claim related to customers who obtained the release of estate property through the WIP Procedures Order, and prosecution of adversary proceedings filed by the Trustee on which Mr. Shannon was the lead attorney at Barron & Newburger, P.C. ("BNPC"). The Court ordered that no costs of transitioning the work between firms would not be billed to the Debtor's bankruptcy estate.

13.     In or around January 2021, the Trustee requested that PLR expand the scope of its services to include assisting the Trustee in resolving certain other claims and working toward an interim distribution. To enable PLR to take on this additional work, on January 29, 2021, PLR requested, and the Trustee agreed, to increased rate for Mr. Shannon's services from $325.00 per hour to $400.00 per hour, reflecting an increase of $25.00 per year since 2018 when Mr. Shannon

5

first started providing services for the Trustee in this case. This change reflects was only applied to services provided on or after January 29, 2021.

14. **Exhibit A** hereto indicates the rates billed for the services of all PLR professionals and paraprofessionals reflected in this application.

C. **Services Provided by PLR in this Case**

15. PLR maintained the detailed written records of the time expended by attorneys and paraprofessionals in rendering professional services to the Trustee as reflected in **Exhibit B** hereto. These time records were generated contemporaneously with the performance of the professional services described therein and in the ordinary course of PLR's practice.

16. As reflected in the time records, PLR professionals and paraprofessionals provided 463.2 hours of services to the Trustee in connection with this case for which compensation is sought, representing $167,732.50 in fees incurred as summarized in the following chart:

| Timekeeper | Year of First Bar Admission | Rate | Hours | Fees |
|---|---|---|---|---|
| Kyung S. Lee | 1984 | $750.00 | 6.5 | $4,875.00 |
| R. J. Shannon | 2014 | $400.00 | 245.1 | $98,040.00 |
| | | $325.00 | 158.9 | $51,642.50 |
| Alma Robles | N/A | $250.00 | 40.5 | $10,125.00 |
| Adam Rodriguez | N/A | $250.00 | 12.2 | $3,050.00 |
| **Totals** | | | **463.2** | **$167,732.50** |

17. PLR professionals represented and advised the Trustee on the following matters: (i) liquidating preference actions, (ii) resolving the final issues with respect to the holdback amounts under the WIP Procedures Order [ECF No. 59], (iii) resolving various claims necessary for an interim distribution and objecting to certain unresolved claims, and (iv) preparing, filing, and representing the Trustee in connect with the Interim Distribution Motion. A summary of the

time spent on the various aspects of this chapter 7 case by PLR professionals is reflected in the following chart:

| Category | Hours | Total Fees |
|---|---|---|
| Avoidance Action Analysis | 213.8 | $72,477.50 |
| Case Administration | 18.9 | $4,785.00 |
| Claims Administration and Objections | 206.0 | $82,125.00 |
| Employment and Fee Applications | 24.5[1] | $8,345.00 |
| **Totals** | **463.2** | **$167,732.50** |

18.    In connection with providing these services, PLR incurred out of pocket expenses totaling $4,050.40. All of the expenses relate to either (a) the service of the pleadings in this case, (b) PACER charges, or (c) legal research through Westlaw for specialty out-of-plan content. The following chart summarizes the expenses incurred by PLR for which the Firm is seeking reimbursement:

| Date | Description | Amount |
|---|---|---|
| 10/23/2020 | Postage for service of filings. | $44.00 |
| 11/01/2020 | Westlaw research charges for October 2020 | $371.05 |
| 11/20/2020 | Postage for service of 11/20/2020 filings | $14.95 |
| 01/22/2021 | Postage for service of dkt. nos. 457-459 | $32.20 |
| 02/01/2021 | Westlaw research charges for January 2021 | $445.90 |
| 02/01/2021 | PACER charges October-December 2020 | $79.50 |
| 02/01/2021 | PACER charges October-December 2020 | $7.20 |
| 02/22/2021 | Postage for service of dkt. nos. 467-468 | $32.20 |
| 03/19/2021 | Postage for service of dkt. no. 479 | $11.73 |
| 04/19/2021 | FedEx of settlement check to R. Tow | $23.20 |
| 04/30/2021 | PACER charges April 2021 | $6.40 |
| 05/13/2021 | Postage for service of dkt. nos. 509-511 | $36.80 |

---

[1] Additionally, PLR professionals and paraprofessionals performed 3.2 hours of services related to transitioning the file from BNPC, for which PLR is not seeking compensation.

| Date | Description | Amount |
|---|---|---|
| 05/25/2021 | Post for service of dkt. nos. 514-519 | $36.80 |
| 05/31/2021 | Westlaw research charges May 2021 | $445.88 |
| 05/31/2021 | PACER charges May 2021 | $40.90 |
| 06/02/2021 | Postage for services of dkt. nos. 521-522 | $34.80 |
| 06/02/2021 | Printing and mailing service of dkt. no. 520 by Trinity Legal Discovery | $2,370.56 |
| 06/08/2021 | Postage for service of dkt. no. 525 | $16.33 |
|  | **Total**: | $4,050.40 |

19. In the normal course of PLR's practice, expenses are only charged to a client after the expenses are actually incurred by PLR. Certain out-of-pocket expenses that PLR will incur for activities during the Application Period are not reflected in the above (e.g., PACER fees for June 2021).

D. **Results Obtained as a Result of PLR's Services**

20. PLR's efforts during the Application Period have allowed the Trustee to substantially advance the administration of this chapter 7 case. As described in the detailed narrative attached as **Exhibit C** hereto, PLR professionals represented the Trustee in his efforts that resulted in $314,432.00 in cash coming into the bankruptcy estate, reducing general unsecured claims/equivalent by $23,827,799.25, reducing priority unsecured claims by $565,730.17, and reducing secured claims by $990,309.00.

21. More importantly, with the assistance of PLR professionals, the Trustee has made or will soon make an interim distribution paying priority and secured creditor claims in full and general unsecured creditors in an amount slightly exceeding 13.1%. The estimated final distribution is approximately 14.56%. In October of 2020, the expected distribution to unsecured creditors was 7%. *See* ECF No. 386. The work performed by PLR during the Application Period

8

in support of the Trustee's efforts has more than *doubled* the expected distribution on account of unsubordinated general unsecured claims in this chapter 7 case.

## DISCLOSURES REGARDING COMPENSATION

22.     Pursuant to Bankruptcy Rule 2016, the PLR makes the following disclosures regarding its compensation in or in connection with this chapter 11 case:

   a. <u>Payments Made or Promised</u>—PLR has not received any payments in or in connection with this case. On September 29, 2020, the Trustee entered into the engagement agreement [ECF No. 391-2] attached to the PLR retention application. All compensation that PLR will receive in this case will be pursuant to the Engagement Agreement and approval of the Court.

   b. <u>Sharing of Compensation</u>—PLR has not shared, agreed to share, or made an understanding with respect to sharing any compensation received by PLR or any other entity in connection with this case. Without limiting the foregoing, PLR attorney R. J. Shannon received a payment from Barron & Newburger, P.C. based in part on the fees earned by BNPC related to this case while Mr. Shannon was employed at BNPC, as disclosed in Mr. Shannon's declaration [ECF No. 391-1] attached to the PLR retention application.

## TRUSTEE'S REVIEW FOR DUPLICATION OF EFFORT

23.     The Attorney Retention Order, and by reference the PLR Retention Order, requires the Trustee to review all proposed applications for compensation for duplication of efforts prior to filing. PLR provided the Trustee a draft of its fee and expense statement attached hereto as Exhibit B on June 28, 2021.[2]

24.     The Trustee reviewed the draft of this Application and the fee statements and does not believe that any duplication among the professionals occurred. To the extent that any duplication is discovered in a final fee application in this chapter 7, the Trustee may seek an

---

[2] PLR did not and will not bill any time for services provided June 29-30, 2021. The draft provided to the Trustee included highlighted time entries for the Trustee's particular attention where PLR professionals collaborated with Cooper & Scully professionals. These were the time entries referencing Julie Koenig on (a) October 27, 2020, (b) January 21, 2021, (c) January 26, 2021, (d) February 3, 2021, and (e) March 17, 2021. Additionally, after review, the Trustee noted that he believed that the time entry on October 1, 2020, required more information. PLR has provided the requested additional detail in the description for that time entry in Exhibit B hereto.

adjustment of final compensation awarded on account of duplication occurring during the Application Period. PLR agrees that the Trustee reserves this right and that any interim compensation awarded pursuant to this Application remains subject to final allowance.

## RELIEF REQUESTED

25. Pursuant to Bankruptcy Code § 330, PLR respectfully requests the entry of an order, substantially in the form of the Proposed Order, allowing compensation for services provided to the Trustee in this case in the amount of $167,732.50 and reimbursement of expenses incurred in the amount of $4,050.40.

## BASIS FOR RELIEF

### A. This Application Demonstrates that PLR is Entitled to the Award of Compensation and Reimbursement of Expenses Requested

26. Bankruptcy Code § 331 authorizes estate professionals to seek compensation and reimbursement of expenses every 120 days (or more often if authorized by the Court) under the standards set forth in Bankruptcy Code § 330. The compensation awarded must be reasonable for services that were actually provided and necessary for administration of the bankruptcy estate or to achieve a reasonably likely benefit to the estate. *See* 11 U.S.C. § 330(a); *In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015). Reimbursement must be for actual and necessary expenses. *See* 11 U.S.C. § 330(a)(1)(B). Section 330(a)(3) indicates that courts should take into account all relevant factors in determining the amount of reasonable compensation and lists six (6) non-exclusive factors.

27. The Fifth Circuit has instructed that additional factors apply with respect to attorneys. In *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977), cert. denied, 431 U.S. 904 (1977), the Fifth Circuit adopted twelve factors to apply to the determination of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and

difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *In re First Colonial*, 544 F.2d at 1298-99. These factors were borrowed from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the "*Johnson* factors."

28. The original *Johnson* factors, as embraced by *First Colonial*, remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code. *In re ASARCO LLC*, No. 05-21207, 2011 WL 2975691, at *14 (Bankr. S.D. Tex. July 20, 2011). The principal change enacted through Bankruptcy Code § 330 is that compensation for estate professionals should be commensurate with fees awarded for comparable services in non-bankruptcy cases rather than strictly limited. *See In re Woerner*, 783 F.3d at 274.

29. As reflected in Exhibit B hereto, the compensation PLR seeks through this Application is on account of the actual and necessary services rendered and the reimbursement sought is on account of actual expenses incurred. Analysis of the factors in *First Colonial* and *Johnson* supports the reasonableness of PLR's requested fees and expenses:

    a. <u>Time and labor required.</u> The professional services rendered by PLR on behalf of the Trustee have required a high degree of professional competence and expertise in order to be administered with skill and dispatch. Exhibit B to this Application contains copies of PLR's time entries for services provided to the Trustee during the Application Period and sets forth in detail all the time for which compensation is sought, as well as the specific actions or matters addressed by each of the professionals in connection with the professional services provided.

b. <u>Novelty and difficulty of legal problems involved.</u>  This *Johnson* factor examines the degree of novelty and difficulty of the issues encountered by PLR in representing the Trustee.  PLR has faced a number of difficult and complex legal issues, <u>to wit</u>:

- The effect of the amendments to Bankruptcy Code § 547(b) by the Small Business Restructuring Act of 2019 in connection with briefing in T*ow v. Airtex Manufacturing, LLLP*, Adv. Pro. No. 20-03255 and related settlement negotiations;

- Interpretation and analysis of relevant state-law lien rights in connection with *Tow v. Rexel USA, Inc.*, Adv. Pro. No. 20-03263 and related settlement negotiations;

- The intersection of various provisions of ERISA and the Multiemployer Pension Plan Amendments Act with the Bankruptcy Code in connection with the resolution Claim No. 35 filed by the I.B.E.W. Local No. 1392 Pension Fund;

-  Subrogation and recharacterization issues in connection with Claim Nos. 101 and 102 filed by the Williams entities; and

- Setoff and recoupment issues in connection with the resolution of various claims.

c. <u>The skill requisite to perform the legal services properly</u>.  A number of difficult issues and matters addressed in this case required a high degree of skill and expertise. In particular, the resolution of several claims filed in this case required detailed analysis of the underlying facts and effective negotiation to effectuate favorable resolutions of claims for the bankruptcy estate.

Handling these issues required knowledge and application of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, court decisions interpreting the same and the interplay of the Bankruptcy Code and other federal and state law.

d. <u>Preclusion of other employment due to the acceptance of this case.</u> PLR's representation of the Trustee has, to an extent, precluded Mr. Shannon from devoting time to other cases and new matters. In the effort to enable a substantial interim distribution in this case necessary to effectuate certain settlements, Mr. Shannon has spent an average of 47.3 hours per month on billable matters in this case since February 1, 2021. Because of this, Mr. Shannon was required to turn down certain new representations to which he did not believe he could devote adequate attention. This motivated PLR's request to increase the rates charged for Mr. Shannon's time before agreeing to expand the scope if its representation in this matter.

e. <u>Customary Fee</u>. PLR's hourly billing rates, as set out in Exhibit A, are the rates that PLR regularly charges its hourly non-bankruptcy clients, except as otherwise noted.[3] The hourly rates charged by PLR are lower than or commensurate with the customary fees charged by professionals of similar experience, reputation, and abilities in this community, as well as those rates charged regionally and nationally. The hourly rates charged by PLR are consistent with the amounts involved in this case, the results obtained by PLR, and the level of skill necessary to perform the work. Accordingly, the fees charged by PLR are reasonable and customary.

f. <u>Whether the fee is fixed or contingent</u>. PLR charges customary hourly rates, as adjusted annually, for the time expended by its attorneys and paraprofessionals in representing the Trustee. PLR's fee is not outcome dependent.

g. <u>The amount of time involved and the results obtained</u>. PLR's actions in this case have allowed the Trustee to substantially advance the administration of this case. As reflected in Exhibit C hereto, PLR professionals represented the Trustee in obtaining (a) $314,432.00 in cash for the estate, (b) reducing general unsecured claims/the equivalent by at least $23,827,799.25, (c) reducing priority unsecured claims by $565,730.17, and (d) reducing secured claims by $990,309.00. Because of this, the Trustee will be able to make an interim distribution to general unsecured creditors of slightly more than 13.1%. The estimated final distribution to unsubordinated general unsecured creditors is approximately 14.56%. In October of 2020, the expected distribution to unsubordinated general unsecured creditors was 7%.

h. <u>The experience, reputation, and ability of the professionals who performed virtually all of the services in the case</u>. Mr. Shannon has 7 years of experience as judicial law clerk and bankruptcy attorney. He is experienced in all aspects of bankruptcy matters, possesses a high level of expertise, and has an excellent reputation in the business and legal communities.

i. <u>At all times covered by this Application, PLR diligently fulfilled its duty as attorney for the Trustee</u>. All services rendered by PLR were necessary, proper, and beneficial to the chapter 7 case. Services performed by PLR were done in a professional, skilled, and expeditious manner, requiring substantially less time than would have been required by counsel with less experience. Every action of PLR was taken to avoid unnecessary legal hours expended, and matters not demanding the services of attorneys were assigned to paralegals or legal assistants.

j. <u>The undesirability of the case</u>. Representation of the Trustee in this chapter 7 case is not undesirable.

---

[3] The regular hourly rate for services provided by Mr. Shannon is $450 per hour.

    k.    <u>Awards in similar cases</u>. The compensation requested in this case is comparable to, if not less than, the compensation allowed in other cases similar in size and complexity to this case.

    l.    <u>Disbursements</u>. PLR disbursed at least the sum of $4,050.40 for necessary expenses incurred in the rendition of professional services during the Application Period. PLR's policy regarding charging of expenses is set forth in the retention agreement attached to its application to employ. The requested expenses are customarily charged to PLR's non-bankruptcy clients.

30.    PLR submits that the compensation and reimbursement sought in this Application was for services provided and expenses incurred that were clearly necessary for the administration of the bankruptcy estate, in fact benefited the estate, or reasonably likely to benefit the estate at the time. The compensation and reimbursement should therefore be allowed under the standard described by the Fifth Circuit described in *In re Woerner*, 783 F.3d 266 (5th Cir. 2015).

**B. This Application Satisfies the Procedural Requirements for an Application for Compensation and Reimbursement of Expenses.**

31.    Bankruptcy Rule 2016 sets out the procedural requirements for an application for compensation. Bankruptcy Rule 2016(a) requires:

    a.    A detailed statement of the services rendered, time expended and expenses incurred, and the amounts requested;

    b.    A statement as to (i) what payments have previously been made or promised to the applicant for services rendered in any capacity related to the case, (ii) the source of such compensation, (iii) whether any compensation previously received has been shared, (iv) whether any agreement or understanding exists between the applicant and another entity for the sharing of compensation for services in or in connection with the case, and (v) the details of any compensation shared or agreement or understanding to share compensation.

Additionally, this Court's procedures require (a) a fee application summary beginning on the first page of the application, (b) attached copies of all fee statements, (c) if total fees exceed $2,000, a narrative description of the services performed and the benefits of those services, and (d) a proposed form of order.

32. This Application provides the requisite detail required by Bankruptcy Rule 2016 and includes the required fee application summary, copies of PLR's fee statements, a narrative description of the services performed and the benefit from those services, and a proposed form of order. It meets the required

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, PLR respectfully requests interim approval and allowance of compensation for professional and paraprofessional services rendered as counsel to the Trustee during the Application Period in the amount of $167,732.50; interim approval and allowance of the amount of actual and necessary out-of-pocket expenses incurred in the course of providing services as counsel to the Trustee during the Application Period in the amount of $4,050.40; entry of an order authorizing and directing that the Trustee pay the Applicant the allowed amount herein; and granting any and all further relief to which PLR may be entitled.

Dated:  July 2, 2021

Respectfully submitted,

**PARKINS LEE & RUBIO LLP**

*/s/R. J. Shannon*
R. J. Shannon (TBA No. 24108062)
Pennzoil Place
700 Milam Street, STE 1300
Houston, TX 77002
Telephone: (713) 715-1660
Email: rshannon@parkinslee.com

*Special Counsel for Rodney D. Tow, Chapter 7 Trustee for Koontz-Wagner Custom Control Holdings LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, a true and correct copy of this Application was served of (i) all parties registered to receive ECF notification in the above captioned case and (ii) by first class U.S.P.S. mail on all parties on the Second Revised Limited Mailing List [ECF No. 198].

*/s/R. J. Shannon*